The bill is for maintenance under the statute. The parties were married in Italy in 1901, and had four children (of whom two are dead). In 1906 the husband came to America, leaving the wife and children in Italy. Thereafter the husband entered into an adulterous cohabitation in this country with a woman named Hall, with whom (together with their several illegitimate children) he is now living. The wife adopted a similar course in Italy with a man (now dead) by whom she had one child, Giuseppe, who is still living, and about eight years old. It is not clear which spouse first erred, nor, in my view, is it material.
In 1920 the wife and the three then living legitimate children of the pair were in reduced circumstances in Italy, the second "husband" having died, and some correspondence was had between them and defendant as to his bringing them over to America.
Defendant says that he was willing to bring the children over but not his wife; that the children declined to come without their mother, and that the mother agreed not to *Page 136 
"molest" defendant if she came over. Taking all this to be true, the final result of this correspondence was that defendant sent to the family in Italy an instrument known as an "act of recall," solemnly executed by him under oath before a notary public and attested by the Italian consular agent, and reading as follows (according to the translation accepted by both parties):
 "UNITED STATES OF AMERICA — ACT OF RECALL.
"In the year one thousand nine hundred twenty-one, on the 25th day of the month of January in the City of Trenton, Mercer County and State of New Jersey, to me Michele Commini, notary public, duly authorized, and to the simultaneous presence of the undersigned witnesses known to me, qualified, has personally presented himself Mr. Umberto Rossi, son of Vincenzo, deceased, of 42 years of age, a machinist by trade, hailing from Assisi, Province of Peruzia, Italy, and at present residing in this City at No. 2352 William St., personally known to me and to the witnesses, who has made known to me his will to recall unto himself, as he actually does with the present act of recall, his wife, Signora Eugenia Rossi nee De Martinis, 41 years old, and children: Vincenzo Rossi, 19 years old; Ida Rossi 17 years old; Ninetta Rossi, 14 years old, and Giuseppe Rossi, 8 years old, all residing in the City of Piasenza, Italy.
"Under the sacredness of the oath the above-mentioned Umberto Rossi has declared to me that, by constant and honest labor he has succeeded in securing for himself a fair position so as to assume as he actually assumes with the present act the formal obligation of providing for all the needs of the recalled ones, who, with him from the first day of their arrival in these States will find food, home and aid, especially in the distant case of illness.
"Furthermore, the above-mentioned Umberto Rossi has declared unto me that he knows the requirements of the laws and regulations on emigration and immigration; that he is a naturalized citizen of the United States of America; that he is duly registered with the military authorities of this country, and following his declarations made under oath and the obligations assumed by him, he believes that the Italian authorities will have no difficulty in issuing the passport.
"As a last act, the above-mentioned Umberto Rossi obligates himself to furnish the recalled ones with the necessary means whenever they might wish to return to Italy.
"The present act has been by me published by reading, and after verification of its contents, it has been signed by the maker Umberto Rossi, by the witnesses and lastly by me Notary Public."
He also sent the money for their passage, and they all came over to the United States in 1921, were met by him on *Page 137 
landing, and established by him in a house in Trenton, where he lived with them for four or five months and then left them, returning to his other family, the Hall woman and her children. Since then, admittedly, he has not contributed to the support of wife or children.
The husband's defense to the present suit is the wife's previous adultery. He also relies on the fact that the boy Giuseppe is not his child.
As against the husband's contentions the wife sets up the agreement or act of recall, and contends that there was condonation by the husband of her admitted guilt.
The husband testified that during the several months' residence with his wife and family in Trenton he did not sleep with his wife, had no sexual intercourse with her, and, in fact, seldom even spoke to her. The wife admits they did not sleep together, but says this was because of an insufficient number of beds, which made it necessary for the husband to sleep with the son or a boarder; she says he treated her affectionately for a couple of months, and that they had sexual intercourse about twice a week. The conflict of testimony is absolute; there is corroborative testimony on both sides.
However, it does not seem to me to be necessary to decide this issue of fact. Assuming that there was no sexual intercourse between the parties, it, neverthless, is true that he executed this formal instrument of recall, wherein and whereby he solemnly assumes "the formal obligation of providing for all the needs" of the wife and children, including "food, home and aid;" that he executed and sent this to Italy for the purpose of having his wife and children come to this country; that, in accordance therewith, he did establish and maintain her in a home with the children, and lived with them there, as the husband and father, and all this, of course, with full knowledge of his wife's prior misconduct.
It is contended on behalf of the husband that there is no condonation in the absence of resumption of sexual intercourse. This would seem to be true in so far as it applies to suits for divorce on the ground of adultery, where condonation *Page 138 
of the adultery is alleged in defense. Goeger v. Goeger,59 N.J. Eq. 15; Taber v. Taber, 66 Atl. Rep. 1082. But the present suit is not a divorce suit; it is one for maintenance.
The duty of the husband to support the wife is a legal duty, and one in which the state has an interest, particularly where, as in the present case, the support of the wife has been cast upon the state (the municipality) and the public (general charities) by reason of the husband's default.
It seems to me that decree for maintenance should be made. The basic principle of the doctrine of condonation is waiver. Even if technical condonation sufficient to avoid a suit for divorce on the ground of adultery has not been proven, the facts show an express waiver of the defense which that adultery might otherwise have given the husband to the suit for maintenance, as well as of all other defenses available to him up to that time. The formal document is itself the act of waiver, and was followed by other acts fulfilling the promise of the instrument. Consideration, if needed, may be found in the acts of the wife in coming to this country, or the act of third parties, the children, in coming over here in consideration of the promise or waiver.
The same result is reached on the kindred doctrine of estoppel. Both the wife and the children changed their position, relying on the "act of recall," and defendant is estopped from denying its efficacy as a waiver of whatever right he might otherwise have had to refuse support and maintenance. In other words, he is estopped from denying condonation.
Into this estoppel enters also the element of public policy. It is a matter of common knowledge, as well as a matter of which this court takes judicial notice, that the entrance of dependent immigrants is conditioned upon a showing of adequate provision for their support. The proofs show that this wife and the children were destitute of means, for the husband had to send the money for their passage, and it is evident that the formal "act of recall," with its solemn *Page 139 
undertaking of support, was executed for the purpose of aiding in the accomplishment of bringing them into the country. To permit the husband now to evade or avoid that responsibility would be to permit him to accomplish a fraud upon our government and to force upon this country and this state the duty and care which belonged to the Italian government if it did not belong to defendant.
We are led also to the same end by a consideration of the instrument of recall as an enforceable contract with or for the benefit of complainant. That there was consideration therefor has already been shown. Nothing has been pleaded or proved which would excuse defendant from liability to perform. It is true that the suit is not in form a suit for specific performance of an agreement to support, but that is mere matter of form, and complainant may be permitted to amend, if necessary, by adding an additional cause of action in that behalf.
At the hearing it seemed to me that the decree should not go to the extent of providing for the support of the child Giuseppe. Further consideration, however, particularly from the standpoint of estoppel and of specific performance of contract, leads to a contrary opinion. Defendant is estopped from contradicting his solemn and express declaration that the child is his, and is bound to the performance of his express promise to support it.
Decree will be advised for complainant in the sum of $10 per week, of which $7 shall be deemed for the wife's maintenance and $3 for that of the child. Costs, including counsel fee of $75, will be allowed. *Page 140