This matter comes before the court on exceptions to a report of Simeon H. Rollinson, Esq., special master, in a divorce case. The cause alleged is extreme cruelty.
The master declined to recommend the divorce. The wife testified that her husband called her vile names, quarreled with her and threatened her and slapped her. She is corroborated in this by her sister and her mother. But the wife says: "He tried to choke me, but I am nearly as strong as he is and able to take care of myself. He would take hold of my neck with both hands, but I am very strong and able to take care of myself. Up to this time I always thought I would live with him, taking his good qualities as well as his bad ones together."
"To constitute the cruelty justifying a divorce from bed and board there must have been a violence causing a reasonable apprehension of danger of life, limb or health from further cohabitation. Close v. Close, 24 N.J. Eq. 338.
"Three or four separate acts of violence occurring at different times * * * which did not cause a condition of terror or apprehension for the future, and did not prevent the continuance of the connubial relation, will not sustain a decree of divorce from bed and board on the ground of extreme cruelty." Hewitt v.Hewitt, 37 Atl. Rep. 1011.
It is apparent, therefore, that these acts in themselves are not sufficient to sustain the allegation of extreme cruelty. The wife said she had no fear of her husband and in spite of these acts willingly lived with him.
She did leave him, however, and the reason she alleges is that he compelled her to submit to an abortion. Her evidence *Page 160 
is that she and her husband went to a doctor. He did not have any conversation with the doctor but she did. She had six treatments with this doctor before she left her husband. She continued these treatments after she left her husband. They were not successful. She then went to another doctor where the treatments were successful. This is her own story. Taking it as true, I cannot see how it constitutes extreme cruelty. She went voluntarily to the doctor. She continued treatment after she left her husband, and when this was unsuccessful went for the actual abortion to another doctor, of whom she does not intimate her husband ever heard.
The only corroboration of this story is the evidence of the mother and sister, who testify that defendant told them he would leave his wife if she became pregnant, and that she must submit to an abortion.
The case of Garrett v. Garrett, 86 N.J. Eq. 293, holds: "It is an inflexible rule in this state that a divorce will not be granted upon the uncorroborated testimony or admission of a party to the suit. Not only does this apply to the cause but to every element in the proofs necessary to sustain it."
The best that can be made out of this testimony is that the husband threatened to leave if his wife were pregnant, and said she must have an abortion. He did not leave her. She left him. Also, there is no corroboration whatever of the fact that the husband did take her to a doctor; that there were any treatments at all or that any obortion was ever committed.
In my opinion the special master was correct in refusing to recommend the divorce, and I will advise a decree dismissing the exceptions. *Page 161