ADELINE KLEIN

*v.*

DAVID KLEIN.

[Decided January 19th, 1928.]

BACKES, V. C.

This action is for a divorce *a vincula* on the ground of extreme cruelty. The Blackwell act made no change in the cause for action. Extreme cruelty always was a cause for divorce. That act simply gives a different relief. Extreme cruelty was and is a ground for divorce from bed and board; now, under the Blackwell act, it is a ground for absolute divorce.

It is abundantly established, beyond peradventure, that during the thirteen months this couple lived together he, the defendant, was frequently drunk, and upon many occasions used violence towards his wife, cursing her, and, finally, it resulted in the woman leaving. She fled because of his conduct. She had reasonable ground for apprehending that if she continued with him it would simply be a repetition of what she had already endured. I need 'not rely in this case on the testimony of the wife; friends and visitors at the home give testimony of his brutal conduct towards her. The defense is a denial of all that his wife has said as to physical violence, and denial of all that his former friends, and prob-

able friends of to-day, have testified to. By the sheer weight of the evidence the cause for action has been established. Her conduct after the separation, it is urged, indicates that the woman was not in fear; that it indicates absence of fear of her husband. What she did afterwards may reflect the conduct of the parties and her state of mind during cohabitation, but it is not a bar to her right to relief if the right of action existed and she did not forfeit it by condoning the offense. They did meet upon occasions, and apparently on friendly terms, but that does not at all militate against the established fact that she was shamefully treated and fled and stayed through apprehension of future abuse on the part of the husband. The wife had stood for far more than she was called upon to, but still, feeling that there might be some salvation of the man she had married, gave him opportunity, even the day after the separation. Notwithstanding what she had been compelled to submit to, she offered to go back, or was ready to go back, and resume relations if he would apologize, meaning thereby if he would reform his ways or promise to, and he refused. That does not indicate that when the woman fled from the house, and even at that time, when she made the approach, she was not apprehensive of a renewal of his misbehavior, but she was willing to take his word and chance that there would not be.

Now, the cause for action under the Blackwell act became fixed the moment the assaults were committed; by that I mean the moment the conduct of the husband amounted to extreme cruelty. It became as fixed as does willful and obstinate desertion at the expiration of two years, or as does adultery. The cause for action for extreme cruelty vests an absolute right to a divorce, which the injured party may exercise after six months—not before. That time must elapse, as was held in the *Coe Case* (*Coe* v. *Coe, 97 N. J. Eq. 57; affirmed, 99 N. J. Eq. 422;* see, also, *Hart* v. *Hart, Ibid. 373*), to permit the offended party to cool down and reflect before taking the step. In the *Coe Case* the husband offered all sorts of reformation—the wife met him—and it was held, as I hold here, that it was the wife's option to forgive and

return, or at the expiration of six months to sue, notwith- standing conduct which might tend to bring the husband to a full realization of his wrong doings, and even though dur- ing that period of time she evinced hope that there might be a reunion.

It has not been argued, as it sometimes is, that the wife, after submitting to numerous acts of cruelty, continued to live with her husband, and that that is evidence of forgive- ness. A wife continuing after brutal conduct on the part of the husband, does so in most cases not in a spirit of for- giveness but in the hope that he may mend his ways, or that she is constrained to do so because of children or her own necessities. Here, after the thirteen months' wretched ex- perience with a drunken, brutal husband, the thing that probably broke the camel's back was that he spat in her face, which he does not deny; it was then that she concluded to separate. I have no confidence in the denials of the defend- ant. I cannot place any reliance whatever in his testimony, and of the many things that lead me to think he is untruth- ful this stands out. He says his wife was in the family way about a month before they separated. Two days after the separation she submitted to *curetting,* as she says; he says an abortion. The process is the same. *Curetting* follows abortion as it may follow many other ailments of the womb, but that is neither here nor there. Within twelve days after, this man says, his wife submitted to him in an automobile. That is, she had just rid herself of a foetus, underwent an abortion, and then on the eve of the cure, after the abortion, again submitted herself to his embrace, taking the chance of a second conception. It may be that a woman will submit within twelve days after an abortion to sexual relations, but experience does not tend that way. I do not believe that part of his story, and the wife denies it. It seems to me cooked up to meet a bad situation. As an affirmative defense—condo- nation—it is not sustained.

I will advise a decree.