Helen M. Burke, petitioner-appellant,

*v.*

Alexander P. Burke, defendant-respondent.

[Submitted February 17th, 1933.   Decided April 28th, 1933.]

Messrs. *Saltzman & Bunevich,* for the petitioner, appellant.

Messrs. *Breslin & Breslin,* for the defendant-respondent.

The opinion of the court was delivered by

DONGES, J.

This is an appeal from a decree of the court of chancery dismissing the appellant's petition for divorce on the ground of extreme cruelty. The advisory master to whom the matter was referred held that the proof of cruelty lacked corroboration and further that there had been condonation.

The parties were married in August, 1925. There is one child, born in 1926. Apparently their married life has never been smooth and there were previous separations followed by reconciliations.

The petitioner testified to a course of conduct on the part of her husband over a period of years which amounted to extreme cruelty. The defendant husband stayed out late at nights and drank heavily. He continually cursed her, using the vilest conceivable epithets. He struck her on numerous occasions and also choked her. He accused her of infidelity by the use of such expressions as "who did you lay to-night?" He invited her to get out and "earn a dollar." He urged her to leave him and threatened to make things so uncomfortable that she would be compelled to do so.

Of course, corroboration of every detail cannot be expected in a case of this kind. Wife abusers do not exercise in public. But where there is corroboration of material elements of a wife's story, weight and credence should be given to those parts which are not susceptible of direct corroboration. *Feybusch* v. *Feybusch, 110 N. J. Eq. 358.*

There is much corroborative testimony in this case. Mrs. Levy, a neighbor who kept a drug store, testified that the petitioner-appellant frequently came to her in a hysterical condition complaining of treatment by the defendant. She said appellant had exhibited bruises to her and said she had been struck by defendant. She heard defendant use some of the vile names above referred to. She had given appellant food when hungry.

Mrs. Leighton, a neighbor, testified to having overheard

quarrels in the apartment of the parties to the suit. She likewise heard the vile names used and heard appellant scream and exclaim as if she had been struck. She said appellant had the appearance of being very miserable. She was pale, poorly clothed, and appeared to be a nervous wreck.

After one quarrel in June, 1930, petitioner made a criminal complaint against her husband for assault and battery. On this occasion petitioner said her husband had choked her. The police officer who took the complaint testified that he observed bruises on her neck. This incident was corroborated by a sister who was in the house and who entered the bedroom when appellant screamed for help.

Dorothy Lockard, a sister of appellant, testified to the use of vile names; that defendant threatened to strap his wife; that he stayed out late at nights, and that his conduct had a visible effect on the wife's health.

Mrs. Monahan, a friend, testified to the profane language, contemptuous treatment, and invitations to get out and "walk the streets." She further testified the petitioner was in ill health, very nervous, and jumped at slight noises.

Rita Lockard, another sister, also testified that Burke treated his wife with contempt, used vile names, &c. She was awakened one night by petitioner's screams and upon entering the bedroom found defendant choking petitioner on the bed. This was the occasion when the police were called. She heard accusations of infidelity and insulting language along that line. She testified defendant was frequently drunk, and was very nasty and abusive when drunk.

Defendant denied the accusations and offered the testimony of a neighbor and a friend who said they never heard or saw any of the things testified to by the petitioner and her witnesses.

Defendant says petitioner complained of insufficient money; that she occasionally left the child with neighbors; that she once left him alone when he was sick; that she went out occasionally at night and refused to tell him where; and that the presence of her sister in the home was a source of trouble.

In this state of the evidence, the advisory master was in error in concluding that "such testimony produced in that behalf lacked the necessary corroboration required by the rule and was in itself unsatisfactory." We think the charges of extreme cruelty were corroborated to a degree much greater than is frequently possible in a case of this kind. There is little contradiction and nothing inherently incredible in the stories of the petitioner and her witnesses.

The rule recently stated by Mr. Justice Trenchard, speaking for this court in *Feybusch* v. *Feybusch, supra,* is:

"Where the testimony of the petitioner in a divorce case makes out a case of extreme cruelty, the rule of corroboration only requires that belief in its truthfulness must find support in the testimony of others, or of surrounding established circumstances. If certain acts of cruelty are corroborated, it is fair to assume that the uncontradicted testimony of the petitioner of other acts of cruelty, for which corroboration is lacking, is true."

On the other hand the defendant is very vague in his accusations and his denials are perfunctory, and his witnesses give little more than negative corroboration. The master was in error in holding the extreme cruelty was not proved.

As to condonation. In the first place, it was not pleaded, and the cases are numerous that condonation is an affirmative defense which must be set up in the answer in order to be available. *Delaney* v. *Delaney, 69 N. J. Eq. 602; Watkinson* v. *Watkinson, 68 N. J. Eq. 632.* Early in the hearing, when a question was asked, on cross-examination, of one of the witnesses which seemed to point in the direction of such a defense, the solicitor for petitioner objected on the ground that condonation was not pleaded and stated he was not prepared to meet it.

Furthermore, on the established facts in this case, the defendant was not entitled to prevail on such a defense. The parties separated on September 15th, 1930, which was the date of the last act of cruelty complained of, which act was the immediate cause of the wife's leaving. She testified that she involuntarily submitted to sexual intercourse in the

latter part of August, 1930. On direct examination she said she voluntarily cohabited early in August, 1930. On cross-examination she was not so definite, and placed the time about two months before separation. Her petition was filed on March 30th, 1931.

However, assuming the early part of August as being the date (which is putting the case in its strongest posture against her), we are of the opinion that this is no bar to her right of action. Condonation is always conditional. *Warner* v. *Warner, 31 N. J. Eq. 225.* In the recent case of *Michels* v. *Michels, 110 N. J. Eq. 393,* we held:

"It will be seen that the contentions of the appellant that resumption of marital relations is a condonation which will defeat relief, in a case where the wrongful conduct is persisted in if the parties live together again, or that the filing of a petition for divorce within six months of the separation will not support a decree, are entirely without merit."

The rule is that if there be a lapse into previous marital offenses, the offended party may rely upon the acts of cruelty antecedent to the alleged condonation.

On September 15th, 1930, petitioner says she was in bed at ten P. M., when defendant came in. "He walked in and said, 'haven't you got out yet?' I said, 'No, I am not going to get out,' and he told me if I didn't get out he would beat me again. I was very frightened. I was actually afraid of Pierre, and I grabbed my things and went to Mrs. Levy's and never went back."

If this incident be true, it was sufficient to remove the effect of any alleged condonation. The advisory master says it was not corroborated, which is true. However, as stated above, every single act of cruelty testified to need not be directly corroborated, and, in view of the ample corroboration of the bulk of petitioner's testimony, she is entitled to credence on this subject. Defendant in his testimony had nothing whatever to say about this incident of September 15th.

Furthermore, it was testified and not denied that in August, 1930, defendant refused or neglected to pay the electric

light and gas bill, although he was able to do so, for a period of two weeks, leaving petitioner without light and gas. These acts were subsequent to the alleged condonation, and were evidently part of the husband's plan to force his wife out of their home.

Upon a reading of all the testimony in this case, we conclude that the decree is erroneous. It appears that this woman has been subjected to a deliberate course of cruel and barbarous treatment by a husband who pursued his own pleasures and shamefully neglected her. There is ample evidence that the health of the wife was affected by this treatment.

The appellant is entitled to a decree of divorce in accordance with the prayer of her petition.

The decree under review is reversed.

*For affirmance*—None.

