ESTHER SOOS, petitioner,

*v.*

EMRICH SOOS, defendant.

[Decided June 2d, 1936.]

*Mr. Harry Unger,* for the petitioner.

*Mr. Edmond J. Dwyer* (*Mr. Louis Auerbacher,* of counsel), for the defendant-counter-claimant.

HERR, A. M.

The wife's petition seeks a decree of divorce from the bond of matrimony on the ground of extreme cruelty under *P. L. 1923 ch. 187 p. 494 (Cum. Supp. Comp. Stat. 1911-1924 p. 989 § 62-3a)*, commonly known as the Blackwell act, which provides that "Divorce from the bonds of matrimony may be decreed for extreme cruelty in either of the parties, \* \* \* *provided,* that no petition for divorce shall be filed until after six months from the date of the last act of cruelty complained of."

The husband answers denying the allegations of the petition and counter-claims for divorce under the same statute. Both claims are at issue and have come to final hearing.

During the progress of the hearing certain questions arose as to the form of both petition and counter-claim, and as to the competence of evidence of alleged acts of cruelty which occurred during the six months' period immediately preceding the filing of the petition and during the pendency of the suit, and it was stipulated that such evidence be received subject to the court's subsequent determination of its competence, under such amendments of the pleadings to be made as should be found proper and necessary to have them conform to and support the proofs. Both parties desire that all of the evidence offered on each side be considered by the court, to the extent of its jurisdiction to consider it, under such suitable amendments of the pleadings as the court may properly make by consent, and such desire accords with the policy of the law that the court should so far as possible hear the whole case between the parties. *Williams* v. *Winans, 22 N. J. Eq. 573, 577; Dowling* v. *Dowling, 93 N. J. Eq. 159; 115 Atl. Rep. 378; Von Bernuth* v. *Von Bernuth, 76 N. J. Eq. 487; 74 Atl. Rep. 252.*

The question of the competence of this evidence is involved in and will be disposed of by the court's determination of the reserved questions with respect to the form of the pleadings, and will be discussed in connection therewith.

The first inquiry relates to the form of the petition and to the extent to which it may be amended by consent. It

was filed on April 30th, 1935, and complains of alleged acts of extreme cruelty on the part of the defendant extending over a period of time commencing shortly after the marriage of the parties on May 30th, 1914, and continuing to June 9th, 1934. The petitioner alleges that on June 9th, 1934, she "informed the defendant that she could no longer stand his cruel and abusive treatment, and that she was compelled to separate herself from him. Thereupon, the defendant pleaded with petitioner not to do so, and upon his promise and undertaking then and there made that he would reform his ways and correct his habits, and never thereafter beat, abuse and treat petitioner cruelly, and never again treat her as he had done theretofore, the petitioner agreed to condone his said offenses and not to separate herself from him, on condition, however, that a resumption or continuance of his cruelty or ill-treatment of her would cause her to separate from him * * *.

"By reason of the defendant's cruelty, the petitioner has had no personal (*sic*) relations with him since March of nineteen hundred and thirty-four."

The petition then goes on to allege that since June 9th, 1934, and until April 6th, 1935, the defendant failed to adhere to his promise to cease from abusing her; that throughout that whole period he beat and abused her until she was finally compelled to separate herself from him. And then follows the allegation that "more than six months have elapsed since the act of cruelty complained of in June of 1934, and petitioner further alleges that in fact and by operation of law, her agreement of condonation was conditional upon a discontinuance of any further cruelty on the part of the defendant, and he having failed to perform the said condition, nullified thereby her act of condonation; and petitioner relies therefore upon the acts of cruelty up to June, 1934, as the basis of this petition for divorce."

It will be noted that the petition alleges acts of cruelty committed within the six months' period immediately preceding the filing of the petition, but does not complain of such acts as constituting (in conjunction with the earlier

acts) the cause of action sued upon. Had it so complained of them it would have been defective because violative of the statutory *proviso* (*Cum. Supp. Comp. Stat. 1911-1924 p. 989 § 62-3a*) that "no petition for divorce shall be filed until after six months from the date of the last act of cruelty complained of." The object of the proscription is to afford the injured party time to calm down and reflect before taking the serious step of suing for a divorce. *Coe* v. *Coe, 97 N. J. Eq. 57; 127 Atl. Rep. 39; affirmed, 99 N. J. Eq. 422; 131 Atl. Rep. 922.* It precludes the filing of the petition until the cause of action is six months old. Where it appears that the petition is filed before that time it is the duty of the court to dismiss it as prematurely filed, whether the defendant pleads the *proviso* as a defense or not: the state is a party. *Wilsdon* v. *Wilsdon, 4 N. J. Mis. R. 879.* On the other hand, if the proofs establish a cause of action based upon allegations of acts occurring more than six months before the filing of the petition further allegations of acts within that period do not justify a dismissal. If they are pleaded as constituting in conjunction with the earlier acts the cause of action sued upon, the petition is defective but may be amended. *Wallace* v. *Wallace, 122 N. J. Eq. 292; 164 Atl. Rep. 565.*

The petition in this case sets up acts which took place within the proscribed six months' period as constituting not a part of the cause of action, but a breach of the condition of a supposed condonation. If the allegations with respect to condonation were sufficient, taken as true, to establish a condonation in fact, there could be no valid objection to the inclusion of the allegations of subsequent acts as showing a breach of the condition. While condonation is ordinarily an affirmative defense which to be available must be pleaded by the defendant (*Burke* v. *Burke, 113 N. J. Eq. 77, 80; 166 Atl. Rep. 140; Wallace* v. *Wallace, supra; Rich* v. *Rich, 109 N. J. Eq. 216; 156 Atl. Rep. 442*), it is not improper for the petitioner to anticipate such a defense by setting it up in the petition and then alleging acts amounting to a breach of its condition. *Stevens* v. *Stevens, 14 N. J. Eq. 374, 375; Newton* v. *Newton, 86 N. J. Eq. 129, 131; 97 Atl. Rep. 294.*

But the allegations of the petition in this case, taken as true, do not spell out a condonation. On the contrary they show that in fact there never was a condonation, and the evidence clearly bears this out. An agreement to condone, without more, is not condonation. Nor can there be a condonation where there have been no "personal" (the pleader intended "sexual") relations between the parties following the last act of cruelty complained of, where, as in this case, the parties are sexually capable and such was their prior normal relationship. *Wallace* v. *Wallace, supra; Klein* v. *Klein, 6 N. J. Mis. R. 359, 361; 140 Atl. Rep. 233.* See *Hann* v. *Hann, 58 N. J. Eq. 211; 42 Atl. Rep. 564; Goeger* v. *Goeger, 59 N. J. Eq. 15; Taber* v. *Taber, 66 Atl. Rep. 1082, 1084.* See, also, *2 Bish. Mar., D. & Sep.* (*1891*) § *274; 6 A. L. R. 1157; 40 Dickinson L. Rev.* (*1936*) *92* (abstracted in *2 Current Legal Thought No. 5 p. 499*). There is no element of estoppel in this case such as was involved in the separate maintenance suit of *Rossi* v. *Rossi, 97 N. J. Eq. 134; 128 Atl. Rep. 386.* See, also, *Potts* v. *Potts, 42 Atl. Rep. 1055, 1058.*

The failure of the petition to allege facts from which condonation can be spelled out leaves the allegations of subsequent acts, pleaded as constituting a breach of the condition, mere surplusage so far as concerns the avowed purpose of the petitioner in pleading them. But for the stipulation they would be open to objection as being impertinent. But if by amendment they may be retained as relevant for any other purpose such amendment may be made, and this depends upon whether proof of them may properly be received at the hearing although they occurred within the proscribed six months' period. If such facts are relevant for any purpose there can be no objection to alleging them in the petition in spite of the fact that they do not constitute part of the cause of action. *Dodd* v. *Wilkinson, 42 N. J. Eq. 647, 651; 9 Atl. Rep. 685; Leslie* v. *Leslie, 50 N. J. Eq. 155; 24 Atl. Rep. 1029;* affirmed on main case, *52 N. J. Eq. 332; 31 Atl. Rep. 724; Daly* v. *Watson, 118 N. J. Eq. 258; 178 Atl. Rep. 781;* see *Lutz* v. *Lutz, 52 N. J. Eq. 241; 28 Atl. Rep. 315.* On

the contrary, their inclusion in the petition may elicit admissions of value to petitioner, and will certainly tend to eliminate surprise and consequent delay. While it is not essential that such facts be pleaded it would seem to be the better practice.

Assuming always that the defendant's acts which occurred within the proscribed period are set up in the petition not as in themselves or in conjunction with the defendant's earlier acts constituting the cause of action, may not evidence of such later acts be admitted and considered by the court as giving character to the earlier acts, without doing violence to the statutory *proviso?* Is not the nature of the offense of extreme cruelty such as to justify and sometimes require a consideration of all of the defendant's acts down to and including the pendency of the suit, as tending to corroborate, explain or characterize the acts upon which the cause of action is based? Such has been the established rule in actions for divorce from bed and board for extreme cruelty and in separate maintenance suits based upon extreme cruelty. *Cook* v. *Cook,* 11 *N. J. Eq. 195, 201; Cavileer* v. *Cavileer, 94 N. J. Eq. 160, 166; 119 Atl. Rep. 101;* see *O'Brien* v. *O'Brien, 103 N. J. Eq. 214, 220; 142 Atl. Rep. 898; affirmed, 105 N. J. Eq. 250; 147 Atl. Rep. 911; English* v. *English, 27 N. J. Eq. 579, 584; 19 C. J. 130 § 341.* So that unless the term "extreme cruelty" has acquired a different connotation under the Blackwell act the same rule should be applied.

The term "extreme cruelty" as used in the statute empowering the court to grant decrees of divorce from bed and board (*P. L. 1907 ch. 216 p. 474, § 3; 2 Comp. Stat. pp. 2028, 2029*) has acquired a definite connotation through many years of judicial interpretation, both in the ecclesiastical tribunals and in our own courts. See *Smith* v. *Smith, 40 N. J. Eq. 566, 593.* As enunciated in a late case the general rule is that to warrant a divorce from bed and board on the ground of extreme cruelty of the husband such conduct by the husband must be shown as will justify the court in believing that if he is allowed to retain his power over his wife, and she is compelled to remain subject to him, her life or her health

will be endangered, or that he will render her life one of such extreme discomfort and wretchedness as to incapacitate her to discharge the duties of a wife. The remedy is *quia timet.* It is not so much punitive as preventive and anticipatory. "Courts interfere on the ground of cruelty to prevent future harm, rather than to punish the offender for what has already been done." *Bonardi* v. *Bonardi, 113 N. J. Eq. 25; 166 Atl. Rep. 207* (a constructive desertion case) and cases cited. See, also, *Black* v. *Black, 30 N. J. Eq. 215, 221;* reversed on other grounds, *31 N. J. Eq. 798; Cook* v. *Cook, 11 N. J. Eq. 195; Fallon* v. *Fallon, 111 N. J. Eq. 512; 162 Atl. Rep. 406; Regan* v. *Regan, 100 N. J. Eq. 158; 135 Atl. Rep. 478; Casey* v. *Casey, 83 N. J. Eq. 603; 93 Atl. Rep. 720.*

Such being the meaning of the term at the time of the enactment of the Blackwell act, it must be assumed that the legislature in using the identical words "extreme cruelty" in the Blackwell act intended to affix to the offense the same attributes it has possessed in the bed and board cases (see *In re Sifola, 101 N. J. Eq. 540, 542; 138 Atl. Rep. 369; State* v. *Garthwaite, 23 N. J. Law 143; 59 C. J. 1050 § 620*), unless the *proviso* of the act has the effect of changing the character of the offense.

In my judgment the character of the offense of extreme cruelty under the Blackwell act is the same as it is in the bed and board cases. See *Sachse* v. *Sachse, 107 N. J. Eq. 41; 151 Atl. Rep. 744; Dinnebeil* v. *Dinnebeil, 109 N. J. Eq. 594; 158 Atl. Rep. 475; Restaino* v. *Restaino, 110 N. J. Eq. 563; 160 Atl. Rep. 345* (cases under the Blackwell act wherein the same definition has been adopted). See, also, *Youmans* v. *Youmans, 3 N. J. Mis. R. 576, 577; 129 Atl. Rep. 122.* The effect of the *proviso* of the act is merely to change the point of time at which a cause of action for extreme cruelty *must* vest or accrue. In the bed and board cases the cause of action must be vested not later than at the time of the filing of the petition. In actions under the Blackwell act the cause of action must accrue at least six months prior to the time of the filing of the petition.

Once the cause of action in either a bed and board case or

in a case brought under the Blackwell act becomes vested, subsequent repentance by the defendant cannot constitute a defense *per se,* for a cause of action cannot become vested at all if it is subject to be defeated by the defendant's subsequent conduct, and until it is vested no suit can be based upon it. Consequently, since the cause of action in the bed and board cases must vest not later than at the time of the filing of the petition, repentance during the pendency of the action is not a defense *per se.* Nor is repentance a defense *per se* in actions under the Blackwell act if made during or after the six months' period, for the reason that the cause of action is and must be vested, if at all, prior to the commencement of the proscribed period.

While it is imperative that the cause of action in bed and board cases vest not later than at the time of the filing of the petition, and in cases under the Blackwell act not later than at a date six months prior to the time of the filing of the petition, nevertheless the cause of action in either case *may* vest at a point of time preceding the time at which it *must* accrue. See *Gartner* v. *Gartner, 109 N. J. Eq. 112; 156 Atl. Rep. 673.* A cause of action for extreme cruelty in either case vests at that moment of time when the offense is committed (see *Coe* v. *Coe, 97 N. J. Eq. 57, 59; 127 Atl. Rep. 39; affirmed, 99 N. J. Eq. 422; 131 Atl. Rep. 922*), that is to say, at a time when an act or acts have been perpetrated which would be sufficient *then* to induce the court to believe that there is reasonable apprehension of injury to the health or life of the aggrieved spouse. See *Klein* v. *Klein, 6 N. J. Mis. R. 359, 360; 140 Atl. Rep. 233.* Further acts of cruelty may aggravate, and may continue the extreme cruelty as a cause of action (*Cf. Adler* v. *Adler, 110 N. J. Eq. 381, 392*), but they do not postpone the vesting of the cause of action if they are not needed to constitute the offense. Hence if the act or acts are sufficient to vest a cause of action prior to the time of the filing of the petition in a bed and board case or preceding the date of the proscribed six months' period in a case under the Blackwell act, repentance on the part of the defendant at any time after such vesting cannot amount to a defense in itself.

Yet such repentance after the accrual of the cause of action is in my judgment a relevant fact to be considered, not as a defense to or in avoidance of the vested cause of action, but rather in explanation of the acts relied upon as constituting the cause of action. The acts of cruelty committed may have been so sanguinary and brutal that the court will not be inclined to believe the defendant, as in *O'Neill* v. *O'Neill, 30 N. J. Eq. 119,* where promises of reformation were made during the hearing (see, also, *Graecen* v. *Graecen, 2 N. J. Eq. 459; Arrowsmith* v. *Arrowsmith, 71 Atl. Rep. 702, 704*), or the defendant may be laboring under that infirmity of temper which will not permit him to adhere to his promise, as in *Holden* v. *Holden, 1 Hag. Con. 453, 457; 161 Eng. Rep. 614.* On the other hand, protestations of repentance after the commission of the alleged acts relied upon as constituting the cause of action may, depending upon the nature of the alleged acts of cruelty and the history of the married life of the parties, negative the existence of a cause of action for extreme cruelty. Such protestations may reflect the "character of the man" and induce the court to believe that his previous acts do not constitute extreme cruelty since it is reasonably certain that they will not be repeated in the future to the detriment of the wife's health, as in *English* v. *English, 27 N. J. Eq. 579, 584,* where the court considered evidence of penitent acts on the part of the husband during the pendency of the action as well as during a four days' period between the separation and the filing of the bill. See, also, *Lynch* v. *Lynch, 16 Atl. Rep. 175; Saunders* v. *Saunders, 82 N. J. Eq. 491; 89 Atl. Rep. 518.*

While the cases just considered were actions for divorce from bed and board for extreme cruelty, there appears to be no decision under the Blackwell act at variance with the view that protestations of repentance after the cause of action accrues may be considered as explanatory of the acts complained of as constituting the cause of action. The case of *Coe* v. *Coe, supra,* lends support to the view that the cause of action is vested when the offense is committed. The view that protestations of repentance are not *per se* a defense is also in accord

with the *dictum* (*p. 59*) of the *Coe Case*. Neither the *Coe Case* nor the case of *Klein* v. *Klein, supra,* held that protestations of reformation may not be considered in order to characterize and lend color to the acts complained of as constituting the cause of action accrued six months before the filing of the petition or earlier. The *dictum* in the *Coe Case* with respect to the vesting of the cause of action was not intended as an intimation that a cause of action for extreme cruelty is never vested in the bed and board cases, for obviously if this were true a party could never bring suit for a decree of divorce from bed and board.

The case of *Hart* v. *Hart, 99 N. J. Eq. 373; 131 Atl. Rep. 903,* decided merely that an aggrieved spouse may institute an action under the Blackwell act at a date which is six months from the commission of the last act of cruelty complained of and need not await the expiration of six months from the date of the separation of the parties. See, also, *Michels* v. *Michels, 110 N. J. Eq. 393, 395; 160 Atl. Rep. 518; Ross* v. *Ross, 105 N. J. Eq. 170; 147 Atl. Rep. 193; affirmed, 106 N. J. Eq. 277; 148 Atl. Rep. 920; Klein* v. *Klein, supra.* The court in the *Hart Case* recognized the rule that the cause of action must vest at least six months prior to the filing of the petition, but no question of repentance was involved.

The case of *Gartner* v. *Gartner, 109 N. J. Eq. 112,* involved the communication of a venereal disease to the wife—an act of extreme cruelty *per se* (see *Fallon* v. *Fallon, supra*), and apparently was the only act of extreme cruelty complained of. At the time of the institution of the action the husband was insane, but at the time of the commission of the act of extreme cruelty and for some time thereafter he was mentally competent. The court held that such subsequent insanity was no defense as the cause of action was complete before the husband became insane. The insanity of a defendant subsequent to the accrual of a cause of action against him for extreme cruelty may be a material fact, however, if it be explanatory of or characterize the act or acts of cruelty relied upon as constituting the cause of action. On the other hand,

the subsequent total and permanent disability of the defendant through accident not connected with the conduct complained of could not under any circumstances reflect the character of the man at the time of the commission of the alleged acts of cruelty and would be wholly irrelevant. In determining either in a bed and board case or in a case brought under the Blackwell act whether the defendant has been guilty of extreme cruelty the court must base its judgment upon the character of the acts committed not later than at the time at which the cause of action must vest. While the remedy in either case is anticipatory, the court cannot base its decree upon any acts committed at a time later than the time at which the cause of action must vest, but may consider evidence of events occurring subsequent to the time at which the cause must vest if and only if they tend to explain and characterize the earlier acts relied upon as constituting the cause of action. For this purpose it is competent for the court in either class of cases to consider protestations of reformation on the part of the defendant after the cause of action has vested and also to take into account acts of cruelty committed since the accrual of the cause of action, whether such acts occur within the six months' period under the Blackwell act or during the pendency of the action. In desertion cases the cause of action vests at the termination of two years of willful, continued and obstinate desertion. And yet it is competent to consider acts of the parties subsequent to the two years' period for the purpose of determining if in fact the desertion during the two years' period was willful and obstinate. Thus if a husband makes advances after the two years' period, such fact may tend to show that the desertion during the statutory period was in fact obstinate. *Mayerson* v. *Mayerson, 107 N. J. Eq. 63, 66; 151 Atl. Rep. 855.* See, also, *Fry* v. *Fry, 100 Atl. Rep. 839, 840.*

For the above reasons, the petition may be amended so as to allege as the cause of action all acts now set forth therein down to the date of October 29th, 1934, six months prior to the filing of the petition. Beyond that point the petition cannot be amended so as to add any allegations with respect

to the cause of action. *Lederer* v. *Lederer, 95 N. J. Eq. 558; 123 Atl. Rep. 241.* Nor can it be supplemented. *Henry* v. *Henry, 79 N. J. Eq. 493; 82 Atl. Rep. 47; affirmed, 81 N. J. Eq. 512; 86 Atl. Rep. 1102.* Acts which occurred subsequently to October 29th, 1934, may be set up in the amended petition, not as part of the cause of action, but as giving character to the earlier acts complained of.

The second inquiry concerns the extent to which the counter-claim may be amended or supplemented to include as part of the cause of action acts of alleged extreme cruelty on the part of the petitioner which are proved to have occurred less than six months before the counter-claim was filed, and acts which occurred after the counter-claim was filed.

Here we are not confronted with the jurisdictional conditions contained in sections 6 and 7 (*P. L. 1907 ch. 216 pp. 476, 477; 2 Comp. Stat. pp. 2029, 2030*) of the Divorce act which preclude the filing of a supplemental petition, since the court has jurisdiction of the counter-claim not through the service of process but by virtue of its jurisdiction of the petition. *P. L. 1916 ch. 57 p. 102; Cum. Supp. Comp. Stat. 1911-1924 p. 991 § 62-14b; Rule 261; Von Bernuth* v. *Von Bernuth, supra; Duke* v. *Duke, 70 N. J. Eq. 135; 62 Atl. Rep. 466; affirmed, 72 N. J. Eq. 434; 65 Atl. Rep. 1117.* There is no restraint upon the court's power to permit the filing of a supplemental counter-claim setting up as part of the cause of action for extreme cruelty acts which occurred less than six months before the filing of such supplemental counter-claim unless it is to be found in the *proviso* of the Blackwell act, and the question therefore is whether the *proviso* applies to causes of action brought by counter-claim.

The counter-claim in this case was filed on June 25th, 1935, and alleges a series of acts on the part of the petitioner of which the last occurred during September, 1934, more than six months before the counter-claim was filed. It contains an allegation that subsequent acts of cruelty were committed and claims "the right" to file an amendment (by way of supplement) at a subsequent time to include allegations of such later acts after the lapse of six months following their

occurrence. There can be no valid objection to such supplement, particularly in view of the stipulation. But as already pointed out evidence has been taken of acts which occurred pending suit and less than six months ago, and whether allegations of these later acts may be set up by supplement, and the evidence of them considered by the court, *as a part of the cause of action,* depends upon whether the *proviso* applies or not.

There never has existed a doubt that the *proviso* of the act does not preclude a defendant from setting up acts occurring within the proscribed period strictly by way of recrimination, if such acts constitute a cause of action (*Cilente* v. *Cilente, 104 N. J. Eq. 605; 146 Atl. Rep. 469*), and in my judgment such acts may be pleaded and proved as a basis for affirmative relief by way of counter-claim.

The *proviso* specifically applies only to petitions. It does not mention counter-claims. While the provisions of rules 70, 71 and 261 make the counter-claim a substitute for the cross-bill or cross-petition under the practice existing prior to 1915 (*McAnarney* v. *Lembeck, 97 N. J. Eq. 361; 127 Atl. Rep. 197*), the failure of the legislature to include in the *proviso* any reference to counter-claims while at the same time specifically providing for petitions creates a doubt as to whether the legislature intended to extend the restriction to suits brought by counter-claim.

This doubt may be resolved by examining the reasonableness of the result if the restriction is so extended, bearing in mind the legislative purpose in adopting the *proviso. Wheeler* v. *Ellis, 56 N. J. Law 28; 27 Atl. Rep. 911; Sivade* v. *Smith, 104 N. J. Eq. 528; 146 Atl. Rep. 364.* The *proviso* restricts the operation of the enacting clause by setting up a time limitation upon the injured party's resort to the remedy created thereby. Unlike the usual statute of limitation it fixes a time before which, instead of a time after which, suit may not be brought, a *terminus a quo* instead of a *terminus ad quem.* The difference is one of essence. The *ad quem* limitation, when available, furnishes a permanent bar to any remedy and so indirectly destroys the right. For this reason

the opposing party has a substantial interest in it and a corresponding right to set it up in defense. But the limitation *a quo* contained in the *proviso* is but a temporary stay provided in the interest of public policy, not in the interest of the opposing party. The cause of action as such is in nowise, directly or indirectly, disturbed or affected thereby. During the interval of waiting the opposing party is likewise powerless to disturb or affect it by any means at his command. Hence it cannot be said that he has any interest in maintaining the delay or any corresponding right to insist upon it. If he does so it will be regarded as in the interest of public policy rather than in his own, just as the court on its own motion will enforce the condition of the *proviso*.

Whether the *proviso* was intended to apply to a cause of action set up by counter-claim, therefore, depends solely upon whether, if so applied, it will reasonably tend to further the public policy for which it was designed. In the *Coe Case* this court defined the public policy to be "to give the injured party time to calm down and reflect, put the offender on probation, and to forgive if pardon is deserved." The purpose of the enforced delay is to discourage an impulsive, ill-advised resort to the court, not to withhold the remedy from an injured party who *deliberately* seeks it. The legislative scheme for securing deliberation is delay. Whether delay is the most effective means to that end is immaterial; at least it is a means reasonably calculated to secure the object sought when applied to a petition, for in that case it effectually postpones litigation for the desired interval of time.

But if it is applied to a counter-claim it fails to accomplish this legislative purpose. Litigation has already been instituted. The defendant is involved therein notwithstanding the *proviso*. The opportunity for reflection has passed. The purpose for which the period of reflection was designed has been defeated. If under the circumstances the defendant has sufficient self-control to maintain a calm mind, there is no longer any point to it. The petitioner has demonstrated an unrepentant attitude by the institution of the suit. It would be inconsistent and absurd to count the time occupied by the pendency of the suit as a period of probation, nor can the

injured defendant reasonably be expected to believe that the petitioner deserves forgiveness of the injury when he has added to it the insult of instituting a matrimonial action. If a six months' delay were to be considered as reasonably tending to produce sober reflection in such a case, logically it should not commence to run until the termination of the suit by a dismissal of the pettiion.

Not only does the purpose of the *proviso* fail if it is attempted to apply its provisions to the counter-claim, but the result of such application places the defendant at a distinct disadvantage in the litigation brought against him. In such suit the defendant is free to defend by setting up in recrimination extreme cruelty consisting of acts some of which may have been committed less than six months before he files his answer. Assume his defense successful. Is he to be denied affirmative relief because all of the acts constituting his cause of action may not have occurred more than six months before, and told to return later on and file an independent suit in which he may be obliged to prove the acts all over again? Rather than place upon him such purposeless hardship the court might delay making its decree until the six months have passed and then after suitable amendments of the pleadings grant him affirmative relief in the same suit. But in either case the delay cannot reasonably be considered as furthering the legislative purpose.

For these reasons it seems to me that the clear policy and purpose of the *proviso* lies in its application to suits brought by petition only, and that such construction is in accord with the established rules applied in the solution of similar statutory ambiguities. Thus the Attorneys' Lien act (*P. L. 1914 ch. 201; Cum. Supp. Comp. Stat. 1911-1924 p. 1805 § 116-76*), providing that "after the service of a summons and complaint in any action at law, or the filing of a bill of complaint or petition in the court of chancery, or the service of an answer containing a counter-claim in any action at law, the attorney * * * shall have a lien," &c., has been construed as not extending a lien to a solicitor who files a counter-claim *in equity* (*i. e.*, a cross-bill or cross-petition under the practice prior to 1915. See *4 Mercer Beasley L. Rev.* 90).

*MacDonnell* v. *Vitille, 111 N. J. Eq. 502; 162 Atl. Rep. 738;* *McCarthy* v. *McCarthy, 117 N. J. Eq. 22; 174 Atl. Rep. 751.* A strict construction must also be applied to the *proviso* of the Blackwell act, so as to limit the operation of the enacting portion of the act no further than the language of the *proviso* clearly requires. *Clark Thread Co.* v. *Kearny, 55 N. J. Law 50; 25 Atl. Rep. 327.* See *Hart* v. *Hart, supra.* The enacting portion unquestionably contemplates suits brought either by petition or by counter-claim, but the more specific language of the *proviso* fails to include counter-claims although expressly designating petitions. The court is without authority to interpolate a word omitted from a statute unless it clearly appears that the legislature intended to include it. *Inhabitants of Township of Orvil* v. *Woodcliff, 61 N. J. Law 107, 111; 38 Atl. Rep. 685; 59 C. J. 992 § 593.*

Such construction is also in accord with the policy of equity already adverted to, to render a complete decree adjusting all rights and protecting the parties from future litigation.

The defendant under the stipulation and in one pleading may therefore amend his counter-claim to conform to the proofs adduced as to the petitioner's acts of cruelty from September, 1934, until the filing of the counter-claim on June 25th, 1935, and supplement his counter-claim as to acts of cruelty proved to have been committed since the filing of the counter-claim down to the termination of final hearing. See Rules 63, 71. The original cause of action under the counter-claim was for an absolute divorce for extreme cruelty. The amendment and supplement setting up the subsequent acts of cruelty are germane to the original cause of action if germane they need be in view of the stipulation of the parties. See *Fodor* v. *Kunie, 92 N. J. Eq. 301, 304; 112 Atl. Rep. 598; O'Donnell* v. *McCann, 77 N. J. Eq. 188, 193; 75 Atl. Rep. 999; Tyree Chancery Pr.* (2d ed.) (*1933*) §§ *35, 43.*

After the amendments shall have been made as above directed, and suitable answers filed, the factual issues will be determined by a consideration, to the extent and for the purposes above indicated, of all of the evidence of alleged cruel conduct on the part of each of the parties toward the other down to the last day of the hearing.