50 N.J. Super. 210 (1958)
141 A.2d 562
HELEN MARTINIQUE, PLAINTIFF,
v.
IRVING MARTINIQUE, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided May 20, 1958.
*212 Messrs. Saltzman, Rubenstein & Kosoff (Mr. J. Mortimer Rubenstein, appearing), attorneys for plaintiff.
Mr. Irving I. Lieberman, attorney for defendant.
HEGARTY, J.S.C.
Plaintiff married defendant on December 24, 1933, after an acquaintanceship of five years. It was the first marriage for each. Two children, a son, emancipated, and a daughter now attending nurse's training school, were born of this marriage. Plaintiff is 47 years of age and defendant is 50 years of age.
Plaintiff's complaint is for absolute divorce and charges defendant with the matrimonial offense of extreme cruelty. In answer, defendant denies the alleged cruelty and seeks dismissal of plaintiff's complaint. Defendant did not seek any affirmative relief.
Without narrating the details of the incidents of marital misconduct, it appears from the testimony of plaintiff, corroborated by Dr. Smollet, that defendant visited physical violence upon her, and, following the birth of their daughter, commenced a course of conduct towards her which made clear that he did not believe her statements that she was ill and in need of medical treatments; that his sexual demands were excessive and harming her health in that he would return home several afternoons a week for that purpose and would also gratify his sexual appetite by other acts at nighttime so that she was unable to get any rest at night. Although she complained to him that his conduct was fast taking its toll and that his excessive sexual demands and constant arguing had seriously impaired her health, he laughed and said, as his wife, it was her duty to appease him in every way. Twice she was hospitalized, once for a partial and the other time for a complete hysterectomy. *213 The doctor warned defendant not to engage in sexual relations following the operations. He belittled the doctors and said he hated them. The doctor's advice was ignored and he forced plaintiff to submit to him even though it caused her great discomfort and pain. Defendant said, "You can do it, you are sick in the head. I'll have you put away." On one occasion, in a fit of anger, in the presence of guests, defendant lifted up a chair and brought it crashing to the floor, in front of where plaintiff sat, with such great force and violence that the legs of the chair broke and defendant fell upon the demolished chair and broke his glasses. They slept together until October, 1953, when he tried to throw her from his bed. Thereafter she occupied a separate room in the house and from then on he never asked her to resume marital relations with him.
Dr. Joseph M. Smollet testified that he spoke to the plaintiff and defendant on a number of occasions. At that time plaintiff was extremely wrought and he tried to outline to defendant the need for conduct that would alleviate the condition. He warned defendant that plaintiff would be an institutional case if the situation continued. Plaintiff would go into a complete breakdown. He was satisfied that her condition was related to the home life. Defendant was asked by him to abstain from sexual relations because of the deleterious effect it was having on her health.
Defendant in his testimony denies ever having struck his wife or demanded excessive sexual relations. He does admit that there were many arguments, some of which he started. However, defendant's story is unsupported and his denial of the charged cruelty is not believed and does not overturn the strong proofs offered by plaintiff and by Dr. Smollet.
In the instant case the acts of cruelty were behind closed doors. In Smith v. Smith, 96 N.J. Eq. 59 (Ch. 1924) the court said:
"The rule of corroboration required no more, if nothing more can be produced, and it rarely can in cases of this sort of marital misconduct, *214 usually committed under cover and suffered in silence. Chancellor Walker, in Lasker v. Lasker, 91 N.J. Eq. 352, 110 A. 27, says:
`The doctrine that corroboration of petitioner's testimony need not be by witnesses to every fact, but that if sufficient corroboration exists as to certain facts, the testimony may be accepted throughout, is made to relieve petitioner in a case of hardship where she would be defeated for want of corroboration of facts which it is impossible to obtain.'
And in Meek v. Meek, 92 N.J. Eq. 23, 112 Atl. 409, he declared 
"That the corroboration of the testimony of a petitioner, required by law in order that a divorce may be granted, need not be that given by another or other witnesses, but may be furnished by surrounding circumstances adequately established.'"
In supporting the proposition that the rule as to corroboration requires only that the plaintiff's testimony must find support in the testimony of others or in the established surrounding circumstances, the Court of Errors and Appeals in Restiano v. Restiano, 110 N.J. Eq. 563, 160 A. 345 (1932) held:
"The testimony of the wife makes out a clear case of extreme cruelty. The rules of corroboration only requires that belief in its truthfulness must find support in the testimony of others, or of surrounding established circumstances. This requirement has been met."
It is plain that the corroborative testimony need not go to each act of extreme cruelty testified to by plaintiff, so long as they bear witness enough to satisfy the court that the plaintiff's testimony as a whole is credible and worth belief. Coe v. Coe, 97 N.J. Eq. 57 (Ch. 1924) affirmed 99 N.J. Eq. 422 (E. & A. 1926).
In Burke v. Burke, 113 N.J. Eq. 77 (1933), the Court of Errors and Appeals held:
"Of course, corroboration of every detail cannot be expected in a case of this kind. Wife abusers do not exercise in public. But, where there is corroboration of material elements of a wife's story, weight and credence should be given to those parts which are not susceptible of direct corroboration. Feybusch v. Feybusch, 110 N.J. Eq. 358, 160 A. 386."
*215 The testimony of the wife as to her physical condition following two operations and defendant's conduct in compelling her to permit him, over her objections and against the advice of a doctor, to engage in sexual relations that produced painful and harmful results, may be corroborated by the attending physician. Grobart v. Grobart, 107 N.J. Eq. 446 (Ch. 1931), affirmed 109 N.J. Eq. 129 (E. & A. 1931).
Defendant urges that no extreme cruelty has been shown because plaintiff has continued to remain in and live in the same house with him. Our courts have not adopted a fixed and definite factual formula for extreme cruelty cases. Each situation must be evaluated separately to determine the acts complained of and their effect upon the parties involved. Yorn v. Yorn, 138 N.J. Eq. 608, 610 (E. & A. 1946). It has, however, long been recognized that extreme cruelty is not confined to physical abuse. Agonies of the mind are no less real than the pains of the body. Zehrer v. Zehrer, 5 N.J. 53, 62 (1950). In extreme cruelty cases a judgment may go for the plaintiff, even though the parties continue to live in the same house. The theory of the Blackwell Act (R.S. 2:50-2, now N.J.S. 2A:34-2(c)), required a cooling-off period. Thus, a wife may continue to reside under the same roof with her husband because of necessity or in the hope that he will reform. Smith v. Smith, 40 N.J. Eq. 566 (E. & A. 1885) and Arrowsmith v. Arrowsmith, 71 A. 702 (Ch. 1909), in which the court very pertinently held:
"The length of endurance is not condonation, but rather evidence of aggravation."
The test as to extreme cruelty is not found in the means used, but rather the effect produced upon the complaining spouse. Principally, whether the acts and conduct of the defendant have been of such a nature that it may be said that the defendant's set purpose, conscious or imputed, is to get rid of the plaintiff. Plaintiff has satisfactorily shown in this case that the defendant's acts, conduct and *216 words had a deleterious effect upon her health and safety which compelled her to separate from him. All of this was made clear to defendant, not only by plaintiff but by Dr. Smollet.
Upon a consideration of all the circumstances appearing and after a careful analysis of the evidence, I find and conclude that plaintiff has made out a case sufficient to sustain the marital offense of extreme cruelty. Judgment nisi will be granted in favor of the plaintiff and against the defendant for absolute divorce upon the ground of extreme cruelty. The remaining questions for determination and inclusion in the form of judgment nisi are: the amount of alimony to be awarded to plaintiff and the amount of support and maintenance to be paid by defendant to plaintiff for the infant child of the marriage, now in nurse's training school, attorneys' fees and costs. Plaintiff's examination of defendant was directed to an exposure by her of his income resulting from his business. She contends that she has shown a course of financial dealings by defendant concerning his business and his ability to furnish her and their daughter with a standard of living consisting of a home and other advantages which belie the truth of his statement that his present income, due to the recession, is about $75 per week. The situation as presented on defendant's income is in conflict. The question of computing the amount of alimony for the wife and support for the infant child now attending school must include a consideration of all relevant factors within the rules laid down in Bonanno v. Bonanno, 4 N.J. 268 (1950). The court has had the opportunity of observing the witnesses and weighing the credibility and sincerity of their testimony in determining where the truth lies. I find and conclude, after considering the pleadings and proofs in this cause, a sound inference can be drawn that the defendant's financial position is such that he should be required to pay the following sums for the purposes stated, all to be incorporated in and form part of the judgment nisi: (a) to pay plaintiff, as alimony, the sum of $35 weekly, until further order of *217 court; (b) to pay plaintiff, for the support and maintenance of the infant child Nancy, the sum of $15 per week, until further order of court. The said payments for plaintiff and child are to be made through Bergen County Probation Department. Defendant will also be required to pay for usual dental, medical, surgical and hospital treatments that may become necessary for plaintiff. If more than ordinary or usual dental, medical, surgical or hospital treatments and services are required, then notice thereof, which shall include the reason therefor, shall be given to defendant and, if objected to, he shall have leave to be heard thereon; (c) defendant shall pay the mortgage installments on the home and the taxes and insurance premiums as they fall due as well as maintenance charges, heating costs, gas and electric and telephone charges; (d) the defendant shall pay to plaintiff or to her attorneys, in addition to pendente lite allowances, the sum of $500 as a reasonable and proper allowance for attorneys' fees, the same being measured in the light of the services rendered by them, together with costs to be taxed.
Form of judgment  original and four copies thereof  may be presented for signing and filing. See R.R. 4:55-1.