ANNA LAVINO, PLAINTIFF-APPELLANT, v. LIBERO LA-
VINO (ALSO KNOWN AS LEO LAVINO), JOSEPH CAT-
TANEO AND MARGARET L. CATTANEO, HIS WIFE,
DEFENDANTS-RESPONDENTS.

Argued March 4, 1957—Decided March 25, 1957.

636

*Mr. Louis Gluck* argued the cause for the plaintiff-appellant.

*Mr. Archibald Kreiger* argued the cause for the defendants-respondents Joseph Cattaneo and Margaret L. Cattaneo, his wife (*Mr. Samuel L. Biber,* attorney).

The opinion of the court was delivered by

BURLING, J.   Anna Lavino, the plaintiff, filed a complaint in the Chancery Division of the Superior Court demanding that a conveyance from her husband, Libero Lavino, to Joseph and Margaret Cattaneo, all named defendants, be set aside and that an inchoate right of dower of the plaintiff be recognized in the realty.   The complaint was dismissed on the ground that it failed to state a cause of action.   *Lavino v. Lavino,* 41 *N. J. Super.* 608 (*Ch. Div.* 1956).   Plaintiff

appealed to the Superior Court, Appellate Division, and we certified the cause prior to a review below.

The facts are not disputed. Plaintiff married Libero Lavino in 1933. On March 22, 1949 she obtained a limited divorce, also termed a divorce from bed and board. Several months thereafter the Legislature enacted *L.* 1949, *c.* 272 (*N. J. S.* 2*A* :34–6) which provides:

"For and during the time that any judgment for divorce from bed and board shall remain in force and effect all property rights of the parties shall be as though a judgment of absolute divorce had been entered.

In any property transaction had by either of the parties in such status the fact of the existence of such judgment shall be *distinctly* recited and reference to the public record thereof shall be clearly set forth."

In 1954 Libero Lavino inherited the subject property from his father and thereafter conveyed it to Joseph and Margaret Cattaneo. The deed contained no reference to the divorce judgment as required by the statute. Lavino and "Elizabeth Lavino, his wife" were named as grantors. The reference to his wife was not a correct representation. The deed was not set forth in the appendix and it is not clear whether a third party signed in such nomination. The separation from bed and board has continued without dissolution or reconciliation.

In order to succeed in establishing an inchoate right of dower in the property, the plaintiff attacks the constitutionality of *N. J. S.* 2*A* :34–6 and, in the alternative, contends that the enactment should be interpreted as applying only to those persons obtaining limited divorces after its effective date. (She also seeks to attack the conveyance because of an alleged fraud in the naming of the feminine grantor in the deed and the failure to recite therein the divorce decree as required by *N. J. S.* 2*A* :34–6, but these questions have no relevancy in the absence of some legally protected interest.)

There are two types of divorce in our law: absolute divorce (*N. J. S.* 2*A* :34–2) and limited divorce

(*N. J. S.* 2*A*:34–3). Absolute divorce dissolves the marital bond and all dower rights are barred. *Peff v. Peff,* 2 *N. J.* 513, 524 (1949). In limited divorce the marital bond subsists and property rights are not affected absent a statutory alteration of the common law. *Supreme Council American Legion of Honor v. Smith,* 45 *N. J. Eq.* 466, 469 (*Ch.* 1889). *N. J. S.* 2*A*:34–6 represents a statutory alteration. It seeks to abolish any marital property rights of spouses who have obtained a limited divorce. In brief, dower and curtesy are barred "for and during the time that any judgment for divorce from bed and board shall remain in force and effect."

Plaintiff complains of a discriminatory incidence of the statute. She sees no distinction between a separate maintenance decree and a decree of limited divorce sufficient to support a diversity of treatment so far as property rights are concerned. *Middleton v. Middleton,* 54 *N. J. Eq.* 692 (*E. & A.* 1896), is said to support her argument.

*Middleton* has no bearing here. In that case the statute providing for limited divorce was under attack. It made this type of divorce available only to those who had "conscientious scruples" against absolute divorce. This was said to be the vice of the legislation which could be removed by availing limited divorce to all persons. The restriction is not a part of the present statute.

The legal effect of a decree of separate maintenance is much the same as that of a limited divorce because in neither is the marital bond dissolved. Historically, the limited divorce stems from the English ecclesiastical courts where it was termed divorce *a mensa et thoro.* See *Bishop on Marriage and Divorce* (*3d ed.* 1859), *sec.* 676 *et seq.* Separate maintenance, on the other hand, is of statutory origin. The primary purpose in obtaining a limited divorce is to nullify the marital obligations of cohabitation; the primary object of separate maintenance is to enforce the husband's duty of support. 1 *Nelson on Divorce and Annulment* (*2d ed.* 1945), *sec.* 1.08, *p.* 19. The statutory philosophy of separate maintenance is to favor a resumption

of cohabitation. *Walsh v. Walsh,* 88 *N. J. Eq.* 368 (*E. & A.* 1917); *Rhodes v. Rhodes,* 92 *N. J. Eq.* 252 (*E. & A.* 1920); *cf.* 10 *N. J. Practice, Herr, "Marriage, Divorce and Separation,"* sec. 346 (1950). Limited divorce forbids it. 11 *Id.,* sec. 662.

█ This is a distinction of consequence. The marital bond, though not dissolved, is considerably more disrupted by limited divorce than by a decree of separate maintenance. The Legislature has taken cognizance of the difference and we are not free to question the wisdom of the divergent treatment. The charge of arbitrary classification cannot be sustained. *Guill v. Mayor and Council of City of Hoboken,* 21 *N. J.* 574, 582 (1956). Other states have accorded similar treatment to property rights and limited divorce. 2*A N. C. Gen. Stat.,* sec. 52–20, 21; 48 *Purdon's Pa. Stat.,* sec. 117a; *cf.* 2 *N. D. Rev. Code of* 1943, *chap.* 14–06, sec. 14–0604.

█ When plaintiff obtained the limited divorce in 1949 she could claim no inchoate right of dower in the property. The right arises from a concurrence of beneficial seisin and coverture. *Hampton v. Hampton Holding Co.,* 17 *N. J.* 431, 438 (1955). Her husband did not come into ownership until 1954. The statute (*N. J. S.* 2*A* :34–6) does not operate here to dislodge any inchoate right previously existing and so it has no "retroactive effect"; the right is simply prevented from arising upon property acquired after the enactment. Hence, there are no implications of due process. *Cf. In re Alexander,* 53 *N. J. Eq.* 96 (*Ch.* 1894); *Walker v. Bennett,* 107 *N. J. Eq.* 151 (*Ch.* 1930); *Brasko v. Duchek,* 127 *N. J. Eq.* 567 (*Prerog.* 1940). These same cases acknowledge the obvious legislative power to alter or abolish the common law rights of dower and curtesy, at least where the general right has not attached to specific property. Compare *Scaife v. McKee,* 298 *Pa.* 33, 148 *A.* 37 (*Sup. Ct.* 1929), appeal dismissed 281 *U. S.* 771, 50 *S. Ct.* 459, 74 *L. Ed.* 1177–1178 (1930).

Here plaintiff had a mere expectancy when the statute was enacted. While this anticipation in certain instances may

be legally protected against fraudulent defeat by an individual, *Hampton v. Hampton Holding Co., supra,* it is not immune from a legislative bar.

The judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, BURLING, JACOBS and WEINTRAUB—6.

*For reversal*—None.