**Henley W. TATE**

v.

**UNITED STATES of America.**

**Civ. A. No. 4372.**

United States District Court
E. D. Tennessee, N. D.

June 28, 1962.

W. L. Ambrose, Jr., Knoxville, Tenn., for plaintiff.

J. H. Reddy, U. S. Atty., Chattanooga, Tenn., for defendant.

ROBERT L. TAYLOR, Chief Judge.

This suit was filed by taxpayer, Henley W. Tate, for refund of income taxes in the amount of $7,499.14 for the tax year 1959. The case presents a very simple question—whether the sum of $14,000.00 paid by the taxpayer under an alimony and property settlement agreement, which was incorporated by the Court in a final decree, is taxable to him or to his wife under Title 26 U.S.C. Sec. 71(a) (c) and (d).

Section 215 of the Internal Revenue Code of 1954, 26 U.S.C. § 215, permits the taxpayer to deduct the payments for the tax year, includible in the income of his former wife and, therefore, taxable to her.

The evidence consisted of oral testimony by taxpayer, Mr. Henry, his auditor, and G. Edward Friar, Esq., Attorney for the taxpayer's former wife, and exhibits filed by one or more of the witnesses. Taxpayer filed a transcript of the record of the divorce proceeding, lately pending in the Domestic Relations Court for Knox County, as well as three checks, two of which were paid in accordance with the order and decree of the Domestic Relations Court. One check was dated January 29, 1959 in the amount of $4,000.00 and the other dated February 27, 1959 in the amount of $10,-000.00. The third check was paid to the Internal Revenue Service in the amount of $6,588.08, representing additional assessment made against the taxpayer for the year 1959 and paid under protest by him.

The testimony showed that taxpayer was married on July 19, 1957 and that he made a property settlement with his

former wife, Jo Tate, on January 23, 1959. The pertinent part of the property settlement reads:

"NOW, THEREFORE, in consideration of the premises and in settlement, adjustment and compromise of all property and alimony questions and rights, the parties hereto agree and bind themselves, and request that any court of competent jurisdiction which may award a divorce to either party, adopt this agreement as the judgment of the Court as to property and alimony matters between them, as follows:

"(1) As alimony, support, and in discharge of all claims upon second party (second party being taxpayer) by first party (first party being Jo Tate, his former wife) second party agrees, and the parties request that such agreement be made the judgment of the Court, to pay to first party the sum of $19,000.00, payable as follows: $14,000.00 upon entry of a valid decree of divorce and $200.00 per month on the first of each month thereafter for a period of 25 months provided, however, that first party be living at the time any such payments fall due, in default of which such payment shall cease."

Taxpayer also agreed to pay the sum of $3,500.00 to the attorneys of Jo Tate for services rendered and to be rendered in the divorce litigation. In addition to the $19,000.00, plus attorneys' fees, Jo Tate was to receive the Chevrolet station wagon, personal clothing and numerous household items that were listed in the agreement.

The transcript recites that an order was entered on January 30, 1959 reciting that the cause was heard on January 31, 1959 (the date in the order must be erroneous as it appears to have been entered on the Court records on January 30, 1959); that proof was heard from which it appeared that an agreement as to the obligations of the defendant for support and maintenance which they proposed to ask the Court to approve if divorce were granted and that such con-tract met the approval of the Court and that the Court would finally approve the same upon the entry of a decree of divorce.

The Court ordered that $4,000.00 be paid to Jo Tate for support and maintenance to be credited against the contractual arrangements between the parties. The Court further ordered that $1,000.00 be paid to Jo Tate's attorneys to be credited on any allowance of fees to said attorneys.

On February 26, 1959, a final decree was entered which recites, among other things, that the case was heard upon the bill and answer, testimony of witnesses "and the property settlement and the support and maintenance contract entered into by the parties on the 23rd day of January, 1959", from all of which the Court granted the divorce and approved "the settlement and support contract".

The decree recites that "Further and in accordance with said contract, the defendant is ordered and directed to pay to the complainant the sum of $19,000.00, payable in installments as follows":

"$14,000.00 on the entry of this decree upon which shall be credited the sum of $4000.00 heretofore advanced to her in accordance with previous order of this Court; and $200.00 per month thereafter for a period of twenty-five (25) months, provided, however, that such payments shall cease if the complainant be not living at the time any such fall due."

At the time of the final decree, Jo Tate's attorneys were awarded $3,500.00 in attorneys' fees and it appearing to the Court that said attorneys had already received on account the sum of $2,000.00, the balance of $1,500.00 was ordered paid.

Mr. Henry prepared the income tax return for the taxpayer for the year 1959 in which $16,000.00 was deducted by the taxpayer under the heading "Alimony". Mr. Henry stated, in substance, that he was of the opinion that taxpayer was

entitled to this amount as a deduction as such sum represented what he believed were periodic payments within the meaning of the internal tax statutes. Mr. Henry never talked to either Mr. Friar or Jo Tate prior to the settlement agreement or the divorce proceeding.

Mr. Friar submitted a proposed property settlement to Mr. Ambrose (the latter being the attorney for the taxpayer) in the form of a letter dated January 21, 1959 which was filed as Exhibit 6. The pertinent parts of this proposed settlement are:

"(1) Mrs. Tate to receive the sum of $15,000.00 in cash at the time of the filing of the Final Decree.

"(2) Mrs. Tate to receive the sum of $200.00 per month, beginning on the first day of March, 1959 said payments to continue at the rate of $200.00 per month until she has received a total of $5,000.00, at that monthly rate.

"(3) Mrs. Tate to receive the sum of $1,000.00 in cash as an advance at the time of the filing of the Original Bill—this $1,000.00 to be deducted from the above outlined $15,000.00—and this amount to cover her current expenses pending the final settlement."

Mr. Ambrose, Attorney for the plaintiff, accepted the proposed property settlement with the following change: " * * * except that you failed to put in the provision which we agreed upon that in the event of Mrs. Tate's death or remarriage, the settlement agreement will provide for the termination of the $200.00 a month payments."

As previously indicated, the statutes that determine the sole question involved in the suit are Title 26 U.S.C. § 71(a) (c) (d) and Title 26 U.S.C. § 215(a), the pertinent parts of which are as follows:

"§ 71. *Alimony and separate maintenance payments*

"(a) *General rule.—*

"(1) *Decree of divorce or separate maintenance.*—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

"(2) *Written separation agreement.*—If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife made a single return jointly.

"(3) *Decree for support.*—If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly.

\*　　\*　　\*　　\*　　\*　　\*

"(c) *Principal sum paid in installments.—*

"(1) *General rule.*—For purposes of subsection (a), installment payments discharging a part of an ob-

ligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.

"(2) *Where period for payment is more than 10 years.*—If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received.

"(d) *Rule for husband in case of transferred property.*—The husband's gross income does not include amounts received which, under subsection (a), are (1) includible in the gross income of the wife, and (2) attributable to transferred property.

\*    \*    \*    \*    \*    \*

"§ 215. *Alimony, etc., payments*

"(a) *General rule.*—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income. \* \* \*"

It is to be observed that the key words in the foregoing statutes that furnish the answer to the problem involved in this suit are "installment" and "periodic". If the payments provided for in the settlement agreement and the Court decree were installment payments they are considered income of the husband and taxable as such, but if considered as periodic payments, they are considered income of the wife and are taxable to her.

■ The distinction between an installment and a periodic payment, the first of which is taxable to the husband, and the second to the wife, is based on the certainty of the amount to be paid. A lump sum or fixed sum even though paid in several batches is taxable to the husband. But a sum although stated in amount is considered a periodic payment and taxable to the wife, if it is terminable by the happening of a contingency before the full amount is paid. Such contingencies are death of husband, death of wife or her remarriage before the entire sum is paid. In any event, regular payments extending beyond 10 years are considered periodic payments and taxable to the wife.

Some cases have rationalized this distinction in another way. The lump sum payment—even though payable in several installments—is considered a division of family capital because for a stated amount and hence taxable to husband. The periodic payment which is usually payable so much a month is considered a payment to the wife for her upkeep and hence income to her. It is so considered even though the payments to her are made at irregular intervals.

The basic distinction is considered in Mertens Law of Income Taxation, Vol. 5, sec. 31A.03. It is succinctly set forth in the following paragraph:

"It has been stated that 'periodic payments' are 'payments made at different times, which, as to amount or duration, are indefinite,' as distinguished from 'installment payments,' which are said to be 'payments made periodically of amounts, equal or unequal, as portions of a definite and established whole.'"

A footnote to the paragraph states, "There need not be definiteness as to the period for payments to constitute 'installment payments', but only certainty as to amount. * * * It would thus seem that the distinguishing feature is solely definiteness of amount."

The distinction is observed in Norton v. Commissioner, 192 F.2d 960 (C.A. 8) —even though an earlier statute was being applied and even though the "periodic" payments were provided in the decree while obligation to pay a lump sum was imposed by separate agreement. In Knowles v. U. S., 182 F.Supp. 150, 155 (D.C.Miss.), the Court said, " * * in the case now before me the decree does not provide for a fixed sum throughout the entirety of time the decree should last; but did designate the payment of the $25,000 in a lump sum separate and distinct from that part of the decree providing for $300 per month until the further order of the court," and concluded the $25,000 payment was an installment payment and not a part of periodic payments. Exactly parallel is Knowles v. U. S., 290 F.2d 584 (C.A. 5).

▇ In the present case although the two types of payments, the $14,000.00 in installments and the balance in $200.00 monthly payments, were provided in the same paragraph, they were nevertheless distinct and distinguishable as installment as to the $14,000.00 payment and periodic as to the $200.00 monthly payments.

The Birdwell case, Birdwell v. Commissioner, 235 F.2d 112 (C.A. 5), which interprets the 1939 Code and is relied upon by petitioner as setting forth his position that the payments here were periodic is so tersely expressed as to be unintelligible to this Court. However, a reference to the opinion of the Tax Court indicates that the Court was simply saying that which we recognize here, that payments not fixed in amount because terminable in the event of death would be considered periodic payments. A re-examination of the decree in our case shows that the Court clearly differentiated the $14,000.00 payable on the entry of the decree and the $5,000.00 payable in $250.00 monthly installments which were to cease upon the death of the spouse. Only the $5,000.00 sum would fall within the reasoning of the Birdwell case as we understand it and payments on the $5,000.00 are not contested in this case. That Court of Appeals made this exact differentiation in Knowles v. U. S., supra, and held a $25,000.00 lump sum payment was not deductible even though there were periodic payments of $300.00 per month in addition.

The other cases cited by petitioner have been examined. The Court considers them either irelevant to or not controlling upon the issues before it. All involved facts totally different from those before us or involved alimony payments terminable upon some stated contingency or involved payments for children.

Let an order be presented in conformity with the views herein expressed.