**David G. LEGGET, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 210, Docket 28478.**

United States Court of Appeals
Second Circuit.

Argued Jan. 21, 1964.

Decided March 20, 1964.

M. Francis Bravman, New York City, for petitioner.

Morton K. Rothschild, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Joseph Kovner. Attorneys, Department of Justice, Washington, D. C.), for respondent.

Before FRIENDLY, SMITH and HAYS, Circuit Judges.

FRIENDLY, Circuit Judge.

David G. Legget petitions for review of a decision of the Tax Court, 39 T.C. 1022 (1963), denying the deductibility of $6,000 paid in 1954 and of $6,625 paid in 1955 to his wife pursuant to a decree of a Florida circuit court dated February 1, 1954. Legget and his wife had lived

separate and apart since August 30, 1952. In April, 1953, he began suit in Florida for a divorce. His wife counterclaimed for "alimony unconnected with divorce" under § 65.09 of the Florida Statutes, F.S.A., of which more hereafter. On February 1, 1954, the court entered a decree dismissing the complaint and granting the counterclaim. It found that Legget had been guilty of adultery and of extreme cruelty, and fixed alimony at $125 per week.

Section 215(a) of the Internal Revenue Code of 1954 provides that "In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife * * * payment of which is made within the husband's taxable year." Section 71(a) provides that a wife's gross income shall include periodic payments from her husband in three situations there described. The only one here pertinent is § 71(a) (1), which follows, the crucial language being italicized: [1]

"(1) *Decree of divorce or separate maintenance.—If a wife is* divorced *or legally separated from her husband under a decree* of divorce or *of separate maintenance,* the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation."

Five sections of the Florida Statutes are relevant. Section 65.03 provides that

"No divorce shall be from bed and board, but every divorce shall be from bonds of matrimony." Section 65.08 authorizes alimony "In every decree of divorce in a suit by the wife" save an adulterous one. Section 65.09, under which the Florida court acted here, provides:

"65.09 *Alimony unconnected with divorce.* If any of the causes of divorce set forth in § 65.04 shall exist in favor of the wife, and she be living apart from her husband, she may obtain alimony without seeking a divorce upon bill filed and suit prosecuted as in other chancery causes; and the court shall have power to grant such temporary and permanent alimony and suit money as the circumstances of the parties may render just; but no alimony shall be granted to an adulterous wife."

Section 65.10, entitled "Alimony unconnected with causes of divorce," says that "if any husband having ability to maintain or contribute to the maintenance of his wife or minor children shall fail to do so, the wife, living with him or living apart from him through his fault, may obtain such maintenance or contribution." Finally, § 65.11 provides that "A decree of alimony granted under § 65.08 and § 65.09 shall release the wife from the control of her husband, and she may use her alimony, and acquire, use and dispose of other property, uncontrolled by her husband; * * *."

■ It is plain that the decree under § 65.09 was "a decree * * * of separate maintenance." The narrow issue is whether it made Mrs. Legget "a wife * * * legally separated from her husband," as § 71(a) (1) also requires.

Little light is shed by decisions denying deductions to husbands for payments

[1]. Subsections (2) and (3) require inclusion in the wife's gross income of periodic payments made by the husband under a written separation agreement executed after the date of the enactment of the 1954 Code and, "[i]f a wife is separated from her husband," periodic payments to her made in compliance with a

decree for her support or maintenance entered after March 1, 1954. The Commissioner concedes the latter provision would permit the deduction of payments subsequent to August 16, 1954, if the decree in this case had been entered a month later.

under decrees providing for separate maintenance in jurisdictions whose laws also make specific provision for legal separation or its ancestor, divorce *a mensa et thoro.* Keleher v. C. I. R., 25 T.C. 1154 (1956) [District of Columbia]; Boettiger v. C. I. R., 31 T.C. 477 (1958) [New Jersey]; C. I. R. v. Rankin, 270 F.2d 160 (3 Cir. 1959) [Pennsylvania]; Fuqua v. Patterson, 193 F.Supp. 313 (N.D.Ala.), aff'd per curiam, 295 F.2d 509 (5 Cir. 1961) [Alabama]. Such decisions show only that the payments would not qualify if the instant decree had been under § 65.10 of the Florida Statutes, F.S.A., which the taxpayer concedes. Our question is whether the relief granted by Florida under § 65.09 is in substance a legal separation although not baptized as such.

■ An affirmative answer would seem indicated as a matter of good sense. The essence of a legal separation is that each spouse may live apart free from any claim of desertion or demand for cohabitation by the other. Madden, Persons and Domestic Relations, 261 (1931). The Supreme Court of Florida has held that when one spouse has an accrued right to divorce based on desertion for a year, he does not lose the right or become a deserter by refusing his spouse's tardy offer of reconciliation, Anders v. Anders, 153 Fla. 54, 13 So.2d 603 (Sup.Ct. en Banc 1943), although he may be charged with desertion if, at the time of his refusal of reconciliation, he was living apart merely on grounds that were initially justifiable but would not have sustained an action by him for divorce. Martin v. Martin, Fla., 66 So.2d 268 (1953). Nothing in the reasoning or language of these opinions suggests that the rule they enunciate is limited to desertion as distinguished from other grounds for divorce. A wife who has obtained a decree under § 65.09 should stand in an even better position with respect to a claim of desertion against her arising out of her husband's subsequent offer of reconciliation; she not only had grounds for divorce but has had them adjudicated.

In Naurison v. Naurison, 108 So.2d 510 (Fla.D.C.App.1959), the court provided for the right of the wife to live separate from her husband in a decree under § 65.09; we think it was doing only what the statute itself established, since any decree under § 65.09 would have this effect.

The Commissioner relies heavily on the command of § 65.03, "No divorce shall be from bed and board * * *." But the apparent force of this is considerably diminished when the history of Florida's divorce laws is examined. The original Florida legislation, Laws of 1828, pp. 11–13, provided both for divorce from the bonds of matrimony, §§ 3 and 4, and for divorce from bed and board, § 6; it also provided that a wife might obtain alimony for certain causes differing from those for divorce, § 11. The Act of 1835 broadened the grounds for divorce to include extreme cruelty, which had been the sole ground for divorce from bed and board in the Act of 1828; this Act of 1835 was the origin of the mandate against divorces from bed and board, Laws, 1838, c. 849. Thus matters generally stood until c. 3581 of the laws of 1885 enlarged § 11 of the original Act to provide, in what is now § 65.09, that "the circuit courts shall have jurisdiction to grant alimony on application of wives for alimony against their husbands on his committing any act which shall be cause of divorce under the statutes of this state." The present § 65.10 providing maintenance for a wife whose husband fails to support her was included as § 1486 of the Revised Statutes of 1892, but the statute which frees the wife who receives alimony under the antecedents of §§ 65.08 and 65.09 from her husband's control (originally § 13 of the Act of 1828, now § 65.11) was not amended to include § 65.10. It thus seems likely that the Florida legislature recreated the legal separation, after a lapse of fifty years, to the extent of providing one for a wife who has established grounds for divorce from her husband, but failed to

make the literary change in § 65.03 that would have been elegant but was not really necessary.

This seems to be the view of Florida courts and commentators. In Preston v. Preston, 116 Fla. 246, 157 So. 197 (1933), the Florida Supreme Court, comparing a decree under § 65.10 with one under § 65.09, said "On the other hand, the right to the relief authorized by section 4988, Comp.Gen.Laws supra, [now § 65.09] is in the nature of a limited divorce * * *." In Hartzog v. Hartzog, Fla., 65 So.2d 756, 758 (en banc, 1953), it analogized § 65.09 to an Illinois statute which an Illinois court had characterized as corresponding to a divorce *a mensa et thoro*. See, to the same effect, Willock, Historical Review of the Divorce Laws of Florida, 5 Fla.Stat.Ann. 531, 542 (1943); Hyman, The Florida Divorce Law, 6.

 We recognize there are statements looking somewhat the other way. Schwenk v. Schwenk, 159 Fla. 694, 32 So. 2d 734 (1947); Tinsley v. Tinsley, 125 So.2d 553 (Fla.1960); Greenberg v. Greenberg, 101 So.2d 608 (Fla.D.C.App. 1958). We have noted also the recent case of Hieber v. Hieber, Fla.App., 151 So.2d 646 (1963), in which a District Court of Appeal, acting directly contrary to Naurison v. Naurison, supra, reversed that portion of a decree entered under § 65.09 which expressly authorized the wife to live separate and apart from her husband on the grounds that this amounted to a limited divorce and was thus contrary to the command of § 65.03. Since this intermediate court was apparently not directed by counsel to any of the significant decisions of the Florida courts which we have discussed above, including the Supreme Court's assertion in Preston v. Preston, supra, 157 So. at 199, that relief under § 65.09 is "in the nature of a limited divorce," and since as shown above a decree of separate maintenance under § 65.09 necessarily gives legal sanction to the wife's right to remain separate regardless of the failure of the court to provide expressly therefor, we are not convinced that this deci-sion is an accurate guide to Florida law. In finding a state's law a federal court should not follow mechanically the most recent available statement of an intermediate court but rather must determine on consideration of all relevant factors how the highest court of the state would decide the question if asked today. Cf. Bernhardt v. Polygraphic Co., 350 U.S. 198, 204–205, 76 S.Ct. 273, 100 L.Ed. 199, and concurring opinion of Mr. Justice Frankfurter, 209–212, 76 S.Ct. 279–281, 100 L.Ed. 199 (1956); Strubbe v. Sonnenschein, 299 F.2d 185, 188–189 (2 Cir. 1962); Evans v. S. J. Groves & Sons Co., 315 F.2d 335 (2 Cir. 1963). Analyzing the materials as best we can, we hold that a decree under § 65.09 of the Florida statutes gives the wife a legal separation within the meaning of § 71(a) of the Internal Revenue Code.

Reversed.