Harold S. RAFAL, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 3191.

United States District Court
D. Delaware.

April 6, 1967.

10. 100 M.C.C. 330, 331.

**62**

Bruce M. Stargatt, Sheldon A. Weinstein, Young, Conaway, Stargatt & Taylor, Wilmington, Del., for plaintiff.

Alexander Greenfeld, U. S. Atty., Wilmington, Del., Mitchell Rogovin, Asst. Atty. Gen., Donald R. Anderson, Marvin Joseph Garbis, Attorneys, Department of Justice, Washington, D. C., for defendant.

### OPINION

STEEL, District Judge.

Plaintiff paid income taxes for 1961 and 1962 upon the basis of rates for the "head of a household" as defined by 26 U.S.C. § 1(b) (1). The Government denied him such status upon the ground that he was not legally separated under the laws of Delaware. Thereupon the plaintiff paid under protest the deficiency claimed. This is plaintiff's suit for a refund. Jurisdiction exists under 28 U.S.C. § 1346(a) (1).

Cross motions for summary judgment have been filed. It is conceded by both parties that no issue exists as to any material fact and that the controversy is solely legal.

The relevant provisions of the tax law are found in the Internal Revenue Code (I.R.C.) of 1954. Section 1(b) (2) defines "a head of household" as follows:

"For purposes of this subtitle, an individual shall be considered a head of household if, and only if, such individual is not married at the close of the taxable year, * * *."

Section 1(b) (3) (B) provides:

"an individual who is legally separated from his spouse under a decree of divorce or of separate maintenance shall not be considered as married".

On March 4, 1944 plaintiff married. He and his wife lived together until about September 4, 1959 in Wilmington, Delaware. On or about the latter date they separated for the purpose of living separate and apart.[1]

On November 23, 1960 plaintiff's wife instituted an action in the Court of Chancery of Delaware for separate maintenance and support for herself and her four children. On January 4, 1961 Chancellor Seitz entered an order denying the wife's motion for interim relief upon the ground that her husband was already providing adequate support for her and the children who were temporarily in her custody. On January 5, 1961 the husband was granted custody of the children by the Family Court of Delaware.

On June 16, 1961 the parties submitted to Chancellor Seitz for "final decision" the question of the amount the wife should receive as separate maintenance. Because the wife had appealed to the Superior Court the order of the Family Court awarding the husband custody of the children, Chancellor Seitz stated in a letter dated June 16, 1961 that he would defer "final decision" pending the disposition of the custody issue, and stated that pending such disposition "[t]he interim order will continue in effect." The letter concluded "[i]f future developments suggest that this Court should reconsider this decision, counsel may bring the matter to my attention upon notice."

On July 6, 1965 Chancellor Seitz entered an order which recited that he had

---

1. At the argument, plaintiff stated that he had left his wife.

been requested by counsel to clarify the order of January 4, 1961, that he had examined the order and his letter of June 16, 1961, and that "for purpose of clarification" the order of January 4, 1961 was amended to show that the husband was as of that date legally obligated to furnish adequate support and maintenance for his wife.[2]

On November 28, 1962 an agreement of separation was entered into between the parties which stated that they had been separated since September 4, 1959, and intended to continue to remain so during the remainder of their lives. On February 27, 1963 a final decree of the Superior Court of Delaware was entered which divorced the parties from the bonds of matrimony.

During 1961 and 1962 plaintiff maintained a home which constituted for such taxable years the principal place of abode for himself and his four unmarried minor children. Plaintiff was not separated from his wife under a decree of divorce in either of those years.

The narrow issue then is whether plaintiff was "legally separated" during 1961 and 1962 under the decree of separate maintenance of the Court of Chancery.

Plaintiff claims that the action taken by the Court of Chancery constituted a decree of separate maintenance. Defendant denies this. It argues that at most the order of January 4, 1961, as supplemented by the letter of June 16, 1961, and clarified by the order of July 6, 1965, amounted only to an interim order, and that no decree of separate maintenance was entered.

It is not necessary to resolve the point for the Court is satisfied that, even if as plaintiff contends a decree of separate maintenance was entered, plaintiff was never "legally separated" from his wife under the decree.

The question whether the action of the Court of Chancery had the effect of legally separating the parties is controlled by Commissioner v. Rankin, 270 F.2d 160 (3d Cir. 1959). There the question was whether a husband was entitled to income tax deductions under § 23(u) of the I.R.C. of 1939, as added to by § 120 (b) of the Act of 1942, c. 619, 56 Stat. 798, for periodic payments which he had made to his wife under a "support and maintenance" order of the Quarter Sessions Court of Pennsylvania. Also involved was the inverse question whether under §§ 22(k) of the I.R.C. of 1939, as added to by § 120(a) of the Act of 1942, the wife was required to include such periodic payments in her taxable income. Both questions turned upon whether the wife was "legally separated from her husband under a decree of divorce or of separate maintenance" as provided in § 22(k).[3] The parties had not entered into a separation agreement nor had either of them instituted divorce proceedings during 1952, 1953, or 1954, the periods involved.

The husband argued that while the decree of the Quarter Sessions Court in terms only provided for "separate maintenance", its effect was to accomplish a "legal separation." This was on the premise that in granting the order the Court had found that the wife was justified in separating herself from her husband because of his mistreatment of her and that from this it followed that the separation was a "legal separation." The Court held that a review of the Pennsylvania cases established that the husband's contention was without foundation. It noted that the support order was obtained from the Quarter Sessions Court in a quasi-criminal proceeding under the Pennsylvania Act of June 24, 1939, P.L. 872 § 733, 18 P.S. § 4733, and that the Common Pleas Court had concurrent jurisdiction under the Pennsylvania Act of May 23, 1907, P.L. 227 §§ 1, 2, as amended, 48 P.S. §§ 131, 132. Despite these two remedies for obtaining a support order, the Court stated that

2. The remaining portions of the order of July 6, 1965, are not material to the present case.

3. This language is identical with § 1(b) (3) (B) of the I.R.C. of 1954 of present concern.

a "legal separation" within the view of Section 22(k) of the I.R.C. of 1939 could be effected in Pennsylvania only by means of an absolute divorce from the bonds of matrimony—*a vinculo matrimonii*, or by a divorce from bed and board—*a mensa et thoro*, and that whereas a decree of absolute divorce terminated a husband's obligation to support a former spouse, a divorce from bed and board was nothing more than a judicial separation in which the Court might allow permanent alimony under § 47 of The Divorce Law.

In Delaware, the remedies of an aggrieved wife whose husband has wrongfully left her or by his conduct has caused her rightfully to leave him, closely parallels that of Pennsylvania. First, there is the quasi-criminal non-support proceeding authorized by 13 Del.C. §§ 502, 503, and 504 over which the Family Court in New Castle County has jurisdiction. Then, there is the equitable proceeding for support and maintenance in the Court of Chancery described in DuPont v. DuPont, 32 Del.Ch. 413, 85 A.2d 724 (1951). Finally, 13 Del.C. § 1501 confers jurisdiction on the Superior Court to grant divorces which include divorces from the bonds of matrimony, 13 Del.C. § 1522, and from bed and board, 13 Del.C. § 1523.

■ Thus, the four methods which a wronged wife has available to her under Pennsylvania law are similarly at her disposal in Delaware. The statement in *Rankin* that a "legal separation" can be effected in Pennsylvania only by an absolute divorce or a divorce from bed and board would appear under the *rationale* of that decision to be equally so in Delaware.

■ It is true that in Delaware the Court of Chancery will not award separate maintenance unless the wife in one sense is "legally separated", i. e., not wrongfully separated, from her husband. But this is also so in Pennsylvania. According to *Rankin*, however, this is not the type of "legal separation" which the Congress intended the Revenue Act to encompass. The fact that the order involved in the *Rankin* case was entered in a quasi-criminal statutory proceeding, whereas the order in the instant case was entered in an equitable proceeding in the Court of Chancery, is an insufficient basis for distinguishing the two cases.

■ Plaintiff emphasizes that Congress in defining an individual eligible for "head of household treatment" has specified two categories of "legal separation:" (1) under a decree of divorce, and (2) under a decree of separate maintenance. Section 1(b) 3(B) of the I.R.C. of 1954. Plaintiff argues that provision for the second category is superfluous if, as the defendant contends, a legal separation in Delaware can only be accomplished under a decree of divorce.

The answer to this contention is probably to be found in a recognition by Congress that marital relation problems will arise in all of the states and that the laws and judicial proceedings bearing upon them might very well differ. Legget v. Commissioner, 329 F.2d 509 (2d Cir. 1964), illustrates the point. There, the Tax Court had disallowed a husband's claim to an income tax deduction for periodic alimony payments made to his wife under a Florida decree entered under § 65.09 of the Florida Statutes, F.S.A. This section authorized the granting of "alimony unconnected with divorce." The question, as in *Rankin*, was whether the parties were "legally separated" under the decree providing for the alimony payments. The Court of Appeals held that they were and reversed the Tax Court. Although the Court recognized that the legislature of Florida had long since abolished a divorce *a mensa et thoro,* it pointed out that in Preston v. Preston, 116 Fla. 246, 157 So. 197 (1933), the Supreme Court of Florida had stated that relief under § 65.09 was in the nature of a limited divorce. It is obvious that the Court of Appeals considered the situation in Florida distinguishable from that in jurisdictions like Pennsylvania and Delaware whose laws authorize a divorce *a mensa et thoro,* for the Court said 329 F.2d at 510–511:

"Little light is shed by decisions denying deductions to husbands for pay-

ments under decrees providing for separate maintenance in jurisdictions whose laws also make specific provision for legal separation or its ancestor, divorce *a mensa et thoro*." (Citing among other cases Commissioner v. Rankin, supra.)

Under the authority of Commissioner v. Rankin, supra, the motion of defendant for summary judgment will be granted and that of the plaintiff will be denied.

