R. T. CAPODANNO, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

LILLEY CAPODANNO, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3786–75, 5112–75.     Filed January 31, 1978.

*Edwin N. Gross,* for the petitioner in docket No. 3786–75.
*Joseph Schoenholz,* for the petitioner in docket No. 5112–75.
*Gerald J. O'Toole,* for the respondent.

FORRESTER, *Judge:* In these consolidated cases, respondent has determined deficiencies in petitioners' Federal income taxes for the taxable year 1971 as follows:

| Docket No. | Petitioner | Deficiency | Sec. 6653(a)[1] penalty |
|---|---|---|---|
| 3786–75 | R. T. Capodanno ........... | $20,539.00 | 0 |
| 5112–75 | Lilley Capodanno .............. | 6,877.90 | $343.90 |

Concessions having been made, the following issues remain for our decision: (1) Whether an amount which petitioner R.T. Capodanno (Capodanno) paid to Lilley Capodanno (Lilley) during 1971 pursuant to a court decree is deductible, in part or whole, by Capodanno pursuant to sections 215 or 163(a) and likewise includable in Lilley's gross income pursuant to section 71(a) or 61(a)(4); (2) whether petitioners are legally separated within the meaning of section 143 and, therefore, entitled to file their returns as "unmarried individuals"; and (3) whether Lilley's underpayment of tax for the taxable year 1971, if any, was due to negligence or intentional disregard of rules and regulations.

## FINDINGS OF FACT

All of the facts have been stipulated and are so found. Those necessary to an understanding of the case are as follows.

Petitioners resided in West Caldwell, N. J., at the time they filed their petitions herein. Petitioners filed income tax returns

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.

for the taxable year 1971 with the Internal Revenue Service Center in Philadelphia, Pa.

Petitioners were married on June 15, 1938, and resided in West Caldwell, N. J., until October 8, 1964. As of such date, the parties no longer resided together.

On July 8, 1965, Lilley filed a complaint for separate maintenance in the Superior Court of New Jersey, Chancery Division, demanding judgment, in part, as follows:

A. Compelling the defendent to support her according to his earnings and their station in life, and to reimburse her for the moneys she was required to advance for her own support and to furnish security for her future support.

\* \* \* \* \* \* \*

E. Ordering the defendant to provide such suitable support and maintenance from his income or to be made out of his property as the Court shall fix and determine for the plaintiff.

The second count of such complaint demanded the return of an amount, plus interest, which Lilley had paid to Capodanno as the share of their joint income tax liability attributable to her earnings as a teacher. The third and fourth counts demanded certain property rights in the family residence and a Plymouth automobile as well as restitution of an amount Lilley had expended to repair the Plymouth automobile.

On October 20, 1965, the Chancery Division entered an order pendente lite requiring Capodanno to pay Lilley the sum of $40 per week "for her temporary support and maintenance commencing as of July 15, 1965 and until the further order of this Court."

In an opinion dated March 11, 1969, the Chancery Division dismissed Lilley's complaint for separate maintenance on the ground that there was no valid showing of need for such support. Defendant conceded that he had constructively abandoned Lilley because of his extreme cruelty toward her.

Lilley appealed the March 11, 1969, decision of the Chancery Division and on June 8, 1970, the Appellate Division affirmed the lower court judgment with some modifications.

Subsequent to the June 8, 1970, decision of the Appellate Division, Lilley sought and obtained certification to the Supreme Court of New Jersey which rendered its opinion on April 5, 1971, reversing in part the Appellate Division's decision. The Supreme Court of New Jersey made an award to Lilley retroactive to July 8, 1965, the date of the commencement of the action, in the sum

of $400 per month, provided that any amounts paid pursuant to the pendente lite order of October 20, 1965, should be deducted from the amount due. In relation to such award the Supreme Court of New Jersey stated, in part, as follows:

In the present case, we think the trial court misconstrued what is meant by "needs." It took into account *only* the fact that the wife was able to support herself by her own means at a level of moderate comfort. It neglected to consider that she had these same means available when she lived with her husband at which time her husband maintained the home and provided for food, automobile maintenance, drugs and other expenses. Necessarily, the loss of these benefits which she must now provide for out of her own earnings has diminished her resources. As a result, she has been forced to give up her vacation trips and deplete her savings since the separation. Yet, as we have said, she is entitled to live at a standard consistent with her former pattern of living. * * *

\*      \*      \*      \*      \*      \*      \*

In circumstances such as these it must be recognized that if a wife chooses to work, she is entitled to do so to protect herself against the possibility of the loss of support from her husband because of his death or other change in circumstances. * * * Although it is appropriate to give some effect to her earnings, the court should not overlook the basic concept that she may through her employment seek to protect herself against the eventualities we have mentioned.

Taking into account both Mrs. Capodanno's needs and her present means on the one hand, and her husband's resources on the other, we think that $400 per month is a fair award. This amount is necessary in the light of her present earnings to maintain her in the pattern of living to which she had become accustomed prior to the separation, and to allow her to retain reasonable savings to provide for an uncertain future. If Mrs. Capodanno's employment should terminate for any reason, she would be entitled to a greater amount of support to meet her needs because of this change in circumstances. * * *

The Supreme Court of New Jersey also awarded to Lilley $1,125, plus interest from October 8, 1964, stating:

Plaintiff also made a claim for the restitution of $9,725 she paid to her husband over a period of eight years as her share of taxes on their joint income tax return. There is no dispute that she paid this amount. Mr. Capodanno maintains that the moneys were paid as part of an agreement whereby Mrs. Capodanno was permitted to work and to use her earnings in any way she chose with the understanding that her earnings would not increase his tax burden. Mrs. Capodanno contended that the moneys were exacted through threats and other means of coercion. The trial judge found that there was no coercion proved and that the agreement was reasonable under the circumstances. We agree with that finding. However, it does appear that Mrs. Capodanno overpaid her fair share of the taxes. She paid $9,725 and both parties agree that if she was obligated to contribute at all, her share was at the most $8,600

in addition to her withholding. Accordingly, we think that she is entitled to $1,125 in restitution with interest from the date of the separation.

Pursuant to the decision of the Supreme Court of New Jersey, Capodanno paid $24,990.55 to Lilley during 1971, consisting of the following amounts:

| | |
|---|---|
| $19,880.00 | Retroactive payment of $400 monthly payments from July 8, 1965, to Apr. 5, 1971 |
| 3,100.00 | $400 monthly payments from Apr. 5, 1971, to Nov. 30, 1971 |
| 1,125.00 | Restitution of amount overpaid under tax-sharing arrangement |
| 885.55 | Interest |
| 24,990.55 | |

Lilley reported income of $3,100 in 1971 which represents those payments made by Capodanno which are attributable to the period April 5, 1971, to November 30, 1971. Capodanno claimed deductions on his 1971 returns in the amounts of $24,081.68 as separate maintenance and $908.87 as interest. Both petitioners filed separate income tax returns for the taxable year 1971 claiming a filing status of single.

Respondent disallowed Capodanno's claimed separate maintenance deduction of $24,081.68 in full and allowed his $908.87 claimed interest deduction. Respondent has amended his pleadings to take the position that the $908.87 claimed interest deduction should be disallowed in full. Respondent increased Lilley's gross income for the taxable year 1971 in the amount of $21,890.55 by including in her income the difference between the total payments deducted as separate maintenance and interest by Capodanno on his 1971 return ($24,990.55) and those reported by Lilley ($3,100). Respondent disallowed the unmarried filing status claimed by each petitioner and computed the tax on the rate for married persons filing separately.

OPINION

Lilley argues that no part of the $24,990.55, which she received during 1971 pursuant to the decision of the Supreme Court of New Jersey, is includable in her gross income under either section 71(a) or section 61, and Capodanno takes the position that

such amount is includable in Lilley's gross income in full and consequently deductible in full by him pursuant to sections 163 and 215. Respondent's position is that such amount is includable in Lilley's gross income under sections 71(a) and 61 only to the extent of $23,865.55, and that the remaining $1,125 is in the nature of a repayment of funds advanced by Lilley.

Those monthly payments paid by Capodanno pursuant to the New Jersey Supreme Court decision are clearly includable in Lilley's gross income under section 71(a)(3)[2] and deductible by Capodanno pursuant to section 215(a).[3] In determining the proper amount of such monthly payments the New Jersey Supreme Court considered the "needs" of Lilley as well as the extent to which she could meet these needs from her own income. The court stated:

> In the present case, we think the trial court misconstrued what is meant by "needs." It took into account *only* the fact that the wife was able to support herself by her own means at a level of moderate comfort. It neglected to consider that she had these same means available when she lived with her husband at which time her husband maintained the home and provided for food, automobile maintenance, drugs and other expenses. Necessarily, the loss of these benefits which she must now provide for out of her own earnings has diminished her resources. As a result, she has been forced to give up her vacation trips and deplete her savings since the separation. * * *
>
> $$*\qquad*\qquad*\qquad*\qquad*\qquad*\qquad*$$
>
> In circumstances such as these it must be recognized that if a wife chooses to work, she is entitled to do so to protect herself against the possibility of the loss of support from her husband because of his death or other change in circumstances. * * * Although it is appropriate to give some effect to her earnings, the court should not overlook the basic concept that she may through her employment seek to protect herself against the eventualities we have mentioned.
>
> we think that $400 per month is a fair award. This amount is necessary in the light of her present earnings to maintain her in the pattern of living to which she had become accustomed prior to the separation, and to allow her to retain reasonable savings to provide for an uncertain future. If Mrs. Capodanno's

---

[2](3) DECREE FOR SUPPORT.—If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly.

[3](A) GENERAL RULE.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income.

employment should terminate for any reason, she would be entitled to a greater amount of support to meet her needs because of this change in circumstances. * * *

[Emphasis supplied.]

It is clear from such language[4] that the $400 monthly payments were paid by Capodanno on account of "the family or marital relationship in recognition of the general obligation to support." Sec. 1.71–1(b)(4), Income Tax Regs. Such payments did not discharge part of an obligation which was specified as a principal sum in the decree. Sec. 1.71–1(d)(1), Income Tax Regs. The court specifically recognized that the amount of the monthly payments would be affected by a change in circumstances such as termination of Lilley's employment and that Capodanno's obligation to make payments would end upon his death. Accordingly, we hold that the $400 monthly payments, which were awarded prospectively, were periodic payments received by Lilley from Capodanno under a decree requiring him to make such payments for her support or maintenance.

The Supreme Court of New Jersey, however, made its award of $400 monthly support payments retroactive to July 8, 1965, the date when the action commenced. Capodanno paid $19,880 to Lilley during 1971 pursuant to such award of a retroactive increase in support. Lilley argues that the amount paid as a retroactive award of the monthly payments represents a nonincludable lump-sum payment within the meaning of section 71(c) because the amount payable by Capodanno was certain and subject to no contingencies as of the date such award was made. We disagree.

*Gale v. Commissioner,* 13 T.C. 661 (1949), affd. 191 F.2d 79 (2d Cir. 1951), involved a situation wherein the court amended its decree increasing the wife's total alimony for each of the years 1941 through 1943 and directing the husband to pay within a 6-month period the full sum necessary to discharge such liability. The wife argued that the sum representing a retroactive increase in alimony was a nonincludable principal sum. We rejected such argument stating (13 T.C. 666):

---

[4]Of course, in determining whether a particular payment represents alimony for sec. 71 purposes, we are not bound by the State court's characterization of the payment in question. *Pierce v. Commissioner,* 66 T.C. 840 (1976). However, in the instant case, unlike in *Pierce,* all the facts and circumstances which have been brought to our attention support the New Jersey Supreme Court's characterization that the $400 monthly payments awarded both prospectively and retroactively were awarded in respect of Capodanno's marital obligation to support Lilley.

The term "principal sum" as used in section 22(k) contemplates a fixed and specified sum of money or property payable to the wife in complete or partial discharge of the husband's obligation to provide for his wife's support and maintenance, as distinct from "periodic" payments made in connection with an obligation indefinite as to time and amount. Not every sum specified in dollars in a divorce decree is to be regarded as a "principal sum" within the meaning of the statute. To so regard it would mean that every additional sum awarded to increase a wife's alimony for a definite year would make that amount a principal sum, however insignificant it might be. The fact that Congress provided that a principal sum would not be taxed to the wife unless the discharge of this obligation extended over ten years makes clear that minor adjustments such as are present here were not to be regarded as principal sums, payable in installments. In the instant case, the award of $19,000 represented no new or different obligation of the husband, nor was it imposed in respect to any right of the wife arising from the divorce other than the right she acquired under the original decree and separation agreement to adequate "periodic" payments of alimony. In short, the $19,000 represented merely the aggregate of various amounts of "periodic" alimony determined by the court to be owing by the husband for prior years under the terms of the separation agreement or the obligation imposed by the original decree of divorce. * * *

Lilley seeks to avoid the rationale of *Gale v. Commissioner* by arguing that the retroactive award was made to replenish her savings rather than for her support. However, we believe this argument misses the point. There is language in the New Jersey Supreme Court opinion to the effect that $400 monthly payments, awarded both retroactively and prospectively, should allow Lilley to "retain reasonable savings to provide for an uncertain future," but the court clearly stated its belief that retention of reasonable savings was one of Lilley's "needs" which should be considered in determining the proper level of support. The retroactive award was necessary to replace Lilley's savings which had been depleted because she received inadequate support payments during the period extending from the date she commenced her action until the New Jersey Supreme Court rendered its decision. Moreover, Lilley has introduced no evidence that the retroactive award was made in respect to any right of hers other than the right to adequate periodic support payments. Accordingly, we hold that the retroactive award represented the aggregate of various "periodic" payments which the court determined Capodanno to owe for prior years under his marital obligation to support Lilley. Accordingly, the entire amount paid by Capodanno pursuant to the New Jersey Supreme Court's award of $400 monthly payments is includable in Lilley's 1971 gross income and deductible by Capodanno.

We next turn to the $1,125 portion of the $24,990.55 amount which represents restitution of the amount by which she overpaid her fair share of taxes according to her agreement with Capodanno. We hold that such amount does not represent a periodic payment includable in Lilley's 1971 gross income because such payment resulted from Lilley's rights under a contract with Capodanno rather than from Capodanno's general obligation to support her.

The $1,125 payment (plus interest) was provided for by the New Jersey Supreme Court separately and distinctly from the $400 monthly payments which we have determined to be includable periodic payments. Since the $1,125 payment is separate and distinct our characterization of it is independent of our characterization of the $400 monthly payments. *Tate v. United States,* 207 F. Supp. 426 (E.D. Tenn. 1962).

Section 1.71–1(b)(4), Income Tax Regs., states:

(4) Scope of section 71(a). Section 71(a) applies only to payments made because of the family or marital relationship in recognition of the general obligation to support which is made specific by the decree, instrument, or agreement. Thus, section 71(a) does not apply to that part of any periodic payment which is attributable to the repayment by the husband of, for example, a bona fide loan previously made to him by the wife, the satisfaction of which is specified in the decree, instrument, or agreement as a part of the general settlement between the husband and wife.

The New Jersey Supreme Court accepted the lower court findings (1) that Lilley had paid money to Capodanno as part of an agreement that she be permitted to work and to use her earnings as she wished so long as her earnings did not increase Capodanno's tax burden, and (2) that such agreement was reasonable under the circumstances. However, the New Jersey Supreme Court awarded Lilley $1,125 in restitution (with interest from the date of the separation) because she had paid $9,725 to Capodanno whereas he was entitled to receive only $8,600 under the terms of the agreement. Accordingly, we hold that section 71(a) does not apply to include the $1,125 sum in Lilley's 1971 gross income since it was not paid on account of Capodanno's obligation to support Lilley. Likewise, such amount is not deductible by Capodanno.

The remainder ($885.55) of the $24,990.55 amount which Capodanno paid to Lilley during 1971 represents interest. Interest is includable in gross income under section 61(a)(4) and

deductible pursuant to section 163(a). Accordingly, we hold such amount to be includable in Lilley's 1971 gross income and deductible by Capodanno for 1971.

We now turn to the issue of whether petitioners are legally separated for section 143(a)(2) purposes so that they are entitled to the filing status of "unmarried individuals" under section 1(c). The $400 monthly payments were awarded to Lilley by the New Jersey Supreme Court under section 2A:34–24 of the New Jersey Statutes.[5]

In *Boettiger v. Commissioner*, 31 T.C. 477 (1958), a court reviewed case, we held that issuance of a decree of separate maintenance under section 2A:34–24 of the New Jersey Statutes did not constitute a "legal separation" for purposes of section 22(k) of the 1939 Code and section 71(a)(1). In *Boettiger* we held that a decree effectuates a "legal separation" only if it "expressly and affirmatively provide[s] that the parties live apart in the future, and thereby alter[s] the original and normal marital relationship" and we stated (31 T.C. at 483–484):

the mere fact that a separate maintenance decree recognizes an existing de facto separation is in no way determinative of whether there is the actual "legal separation" required by section 22(k). The added factor that a decree indicates facts that could support a decree for absolute or limited divorce is meaningless, when no such decree was in fact made or entered. * * *

* * * * * * *

Thus, since the above-cited New Jersey cases clearly indicate that the separate maintenance suit between the petitioner and his wife only effectuated the wife's right to support, and does not affect their marital status in any other way, there was no "legal separation" as required by section 22(k). * * *

In *Weinkrantz v. Weinkrantz*, 129 N.J. Super. 28, 322 A.2d 184 (Super. Ct. App. Div. 1974), the New Jersey Superior Court, Appellate Division, held that a decree of separate maintenance under section 2A:34–24 of the New Jersey Statutes did not give

---

[5] 2A:34–24. Abandonment of wife; support of wife and children; debts during maintenance

If a husband, without justifiable cause, shall abandon his wife or separate himself from her and refuse or neglect to maintain and provide for her, the court may order suitable support and maintenance to be paid and provided by the husband for the wife and her children, or any of them, by their marriage, or to be made out of his property and for such time as the nature of the case and circumstances of the parties render suitable and proper. The court may compel the defendant to give reasonable security for such maintenance and allowance and may, from time to time, make further orders touching the same as shall be just and equitable and enforce such judgment and orders in the manner provided in section 2A:34–23 of this title. During the time such maintenance shall be allowed, the husband shall not be chargeable with the debts of the wife.

rise to a "legal separation" within the meaning of section 6013(d)(2), stating (322 A.2d at 187–188):

While a judgment for separate maintenance recognizes the existing *de facto* separation of the husband and wife, it does not order or provide for such separation, and it does not sanction or authorize it. A judgment of divorce from bed and board (limited divorce) obtained pursuant to N.J.S.A. 2A:34–3 is significantly different from a judgment for separate maintenance in this respect. A judgment of divorce from bed and board decrees a judicial separation * * * as does a judgment of divorce (absolute divorce) obtained pursuant to N.J.S.A. 2A:34–2.

Petitioners seek to distinguish *Boettiger* and *Weinkrantz* on the ground that those cases dealt with the effect of separate maintenance decrees issued on the grounds of abandonment, whereas the decree in the instant case is issued upon the ground of extreme cruelty. We find no merit in such argument. The cases cited by petitioners do not involve the legal effect of a decree for separate maintenance but merely acknowledge that a cause of action for divorce based on extreme cruelty is vested when the offense is committed so that the spouse against whom the offense was committed is not obliged to live with the other. *Soos v. Soos,* 14 N.J. Misc. 381, 185 A. 386 (Ch. 1936); *Howey v. Howey,* 77 N.J.E. 591, 78 A. 696 (1910). However, the cause of action based on extreme cruelty vests regardless of whether a decree of separate maintenance is issued. *Soos v. Soos, supra; Howey v. Howey, supra.* Clearly, it is the vested cause of action for extreme cruelty rather than the separate maintenance decree which justifies the abused spouse to live apart from the other. Moreover, a separate maintenance decree based on cruelty, which is entered by the parties consent, does not even establish that the complaining spouse has a vested cause of action for divorce based on extreme cruelty. Although cruelty may be proved without corroboration in a separate maintenance action, corroboration is required in order to prove cruelty in a divorce action. *Canova v. Canova,* 32 N.J. Super. 284, 108 A.2d 287 (Super. Ct. App. Div. 1954); *Pierson v. Pierson,* 15 N.J. Misc. 117, 189 A. 391 (Ch. 1937); *Gerhold v. Gerhold,* 109 N.J. Eq. 634, 158 A. 437 (1932). Therefore, neither a separate maintenance decree based on extreme cruelty nor a separate maintenance decree based on abandonment expressly and affirmatively provide that the parties live apart in the future, so that the original and normal marital relationship is altered. *Boettiger v.*

*Commissioner, supra,* and *Weinkrantz v. Winkrantz, supra,* are indistinguishable from the instant case.

Petitioners rely upon *Legget v. Commissioner,* 329 F.2d 509 (2d Cir. 1964), to argue that a separate maintenance decree based on extreme cruelty "is in substance a legal separation although not baptized as such." 329 F.2d at 511. However, *Legget* is distinguishable from *Boettiger,* and in fact the Second Circuit Court of Appeals specifically distinguished *Boettiger* (at pages 510–511), on the ground that the *Legget* jurisdiction, unlike New Jersey, did not make specific provision for both limited divorce as well as separate maintenance.[6] Moreover, we believe the decision of the intermediate State court in *Weinkrantz v. Weinkrantz, supra,* to be an accurate guide to New Jersey law since it is soundly supported by *Lavino v. Lavino,* 23 N.J. 635, 130 A.2d 369 (1957), in which the New Jersey Supreme Court stated (130 A.2d at 371):

> The legal effect of a decree of separate maintenance is much the same as that of a limited divorce because in neither is the marital bond dissolved. Historically, the limited divorce stems from the English ecclesiastical courts where it was termed divorce *a mensa et thoro.* Separate maintenance, on the other hand, is of statutory origin. * * * The primary purpose in obtaining a limited divorce is to nullify the marital obligations of cohabitation; the primary object of separate maintenance is to enforce the husband's duty of support. * * * *The statutory philosophy of separate maintenance is to favor a resumption of cohabitation.* * * * Limited divorce forbids it. [Citations omitted; emphasis added.]

In contrast, in *Legget,* the Florida Supreme Court held that the relief authorized by the statute in question was "in the nature of a limited divorce" so that inconsistent intermediate court cases were not "an accurate guide to Florida law." 329 F.2d at 512. Accordingly, we hold that, under New Jersey law, a separate maintenance decree based on extreme cruelty is not a "legal separation" for purposes of section 143(a)(2) so that petitioners are not entitled to file as "unmarried individuals" under section 1(c).

Respondent also determined that Lilley was liable for an addition to tax pursuant to section 6653(a) on the ground that all or part of the underpayment of tax required to be shown on her

---

[6] "Little light is shed by decisions denying deductions to husbands for payments under decrees providing for separate maintenance in jurisdictions whose laws also make specific provision for legal separation or its ancestor, divorce *a mensa et thoro.* * * * *Boettiger v. C.I.R.,* 31 T.C. 477 (1958) [New Jersey] * * * [*Legget v. Commissioner,* 329 F.2d 509, 510–511.]"

return was due to negligence or intentional disregard of the rules. Such determination is presumptively correct. *Reily v. Commissioner*, 53 T.C. 8 (1969). Lilley has not met her burden of proving that no part of her underpayment was due to negligence or intentional disregard of rules and regulations. The interest portion of the payments which she received from Capodanno during 1971 was clearly includable in her gross income yet she has not asserted any reasonable ground for failing to include it in her gross income. Accordingly, we hold that the section 6653(a) addition to tax is applicable because part of Lilley's underpayment of tax was due to negligence.

*Decision will be entered under Rule 155.*