Helen Kellner v. Commissioner.
Kellner v. Commissioner
Docket No. 1728-68.
United States Tax Court
T.C. Memo 1971-103; 1971 Tax Ct. Memo LEXIS 230; 30 T.C.M. (CCH) 448; T.C.M. (RIA) 71103; May 13, 1971, Filed. Helen Kellner, pro se, 30 W. 90th St., New York, N. Y. David W. Winters, *231 for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined deficiencies in petitioner's income taxes and an addition to tax as follows: Addition to
Taxable Year
Defi-
Tax under
ended
ciency
Sec. 6653(a) [1]
Dec. 31, 1964
$ 696.92
Dec. 31, 1965
1,054.91
$52.75
A variety of items are involved including (1) a dependency exemption for petitioner's mother and whether, as a consequence, petitioner was entitled to head-of-household status for 1965; (2) the amounts of deductions for medical expenses, charitable contributions, and business expenses for 1964 and 1965; and (3) an addition to tax for 1965 because of negligence or intentional disregard of respondent's rules and regulations. [2] These issues are for the most part 449 purely factual and the burden of proof is on the petitioner. Welch v. Helvering, 290 U.S. 111 (1933); Rule 32, Tax Court Rules of Practice.
*232 Petitioner's legal residence was in New York, New York, at the time she filed her petition herein. She filed her 1964 and 1965 Federal income tax returns with the district director of internal revenue, Manhattan, New York. During the years involved herein, the petitioner was employed by the City of New York as a fourth grade teacher and received salary for her services in the amounts of $8,853.12 and $10,135.42 for 1964 and 1965, respectively. Dependency Exemption In her 1964 and 1965 returns, petitioner claimed a $600 dependency exemption for her mother. In order to succeed in her claim, petitioner must establish that the amount she contributed for her mother's support exceeded one-half of the latter's total support during the period in question. Section 152(a)(4); Aaron F. Vance, 36 T.C. 547 (1961). While petitioner's testimony was uncorroborated as to the amounts she asserts she expended for her mother's support and to a large degree was also lacking in specificity, we are satisfied that her mother was in excess of 70 years of age, had certain physical infirmities, and lived in a separate apartment for which she paid rent of $85 per month, and we so find. We *233 also find that petitioner was the sole support of her mother and that her mother had not more than $1,440 in income which she used for her support. Interpolating these figures, it appears that petitioner's burden of proof will be satisfied if the total amount expended for support by her mother or on her behalf equalled $2,881. Since the rent amounted to $1,020 in 1965, this means that the other items of support need only equal $1,861, or slightly less than $36 per week - a quite small amount in light of the commonly known cost of living in 1965. Based upon the foregoing and upon our evaluation of the record as a whole, we are satisfied that petitioner expended at least $1,441 for the support of her mother, and we so find. Petitioner is therefore entitled to the claimed dependency exemption for the taxable year 1965. [3]
Head-of-Household Status Based upon the dependency exemption for her mother, petitioner claimed "head-of-household" status for the taxable years 1964 and 1965. See section 1(b)(2). In the *234 deficiency notice, respondent disallowed this status for 1965 on the ground that petitioner had not provided over one-half of the support for her mother. In view of our conclusion as to the dependency exemption, this ground cannot be sustained. See section 1(b)(2)(B). However, at the trial, respondent asserted a further ground, as to which he has the burden of proof, that petitioner was married throughout the taxable year 1965. Section 1(b) (2) makes "head-of-household" status available only to a person who is "not married at the close of his taxable year" and section 1(b) (3)(B) provides that "an individual who is legally separated from his spouse under a decree of divorce or of separate maintenance shall not be considered as married." On December 12, 1963, the Family Court of the State of New York issued an Order of Protection in the Matter of Helen Kellner, Petitioner v. Isaac I. Kellner, Respondent. The Order merely directed that respondent and petitioner therein "are both to remain away from each other." Petitioner herein does not argue that this order was not in effect throughout the taxable year 1965, nor does she contend that any other order or decree affecting her marital *235 status was in existence during that period. In fact, she maintains that the Family Court order required that she and her husband remain apart and that, since they did remain apart, she was separated from her husband and was therefore, "not married" within the meaning of section 1(b)(3)(B). Unfortunately for petitioner, her position cannot be sustained. Actual separation does not satisfy the statute which requires that (1) there must be a legal separation and (2) that such separation must have been accomplished by a "decree of divorce or of separate maintenance." On its face and also because the Family Court of the State of New York is without jurisdiction to 450 decree legal separations, the Order of Protection does not satisfy either of the statutory conditions. Cf. Palmquist v. United States, 284 F. Supp. 577 (N.D. Cal., 1967); Rafal v. United States, 267 F.Supp. 61 (D. Del., 1967); N. Y. Family Court Act, secs. 115, 652 (McKinney 1963). Accordingly we hold that respondent had satisfied his burden of proving that petitioner is not entitled to head-of-household status for 1965. Medical Expenses Petitioner claimed to have expended the amounts of *236 $2,850 and $3,310 for the medical care of herself and her mother during the taxable years 1964 and 1965, respectively. Respondent has conceded that petitioner expended the amounts of $818.99 in 1964 and $365.00 in 1965 for her own medical care. The basis for respondent's concession was petitioner's testimony as to her need for orthopedic molds and their cost, as well as certain doctors' and hospital bills and other corroborating written evidence. Other than with respect to the items conceded by respondent, petitioner submitted no evidence other than her own testimony, which was utterly lacking in any specificity either as to time of expenditure or amount. Her excuse for not submitting any written evidence as to payments to doctors or for drugs was that it was impossible for her to bother the doctors for receipted bills and too much trouble to keep other corroborating records. [4] Under all the circumstances, we cannot say that petitioner has sustained her burden of proof as to such expenditures claimed for her own medical care beyond the amounts allowed by respondent or beyond the 1 percent limitation contained in section 213(b) insofar as medicines and drugs are concerned.[5] We are, *237 however, persuaded that petitioner made expenditures for the medical care of her mother during each of the years involved herein. Based upon our examination of all the evidence, we find that petitioner expended $100 for her mother's medical care in each of the taxable years 1964 and 1965. Cohan v. Commissioner, 39 F. 2d 540, 544 (C.A. 2, 1930).
Charitable Contributions Petitioner claimed deductions for charitable contributions in her 1964 and 1965 tax returns in the amounts of $190.80 and $280.00, respectively, which respondent has allowed to the extent of $78 for 1964 and $52 for 1965. On the basis of the evidence before us, we find that *238 petitioner made charitable contributions in the amounts of $100 and $110 in 1964 and 1965, respectively (including the amounts allowed by respondent). Cohan v. Commissioner, supra.
Business Expenses In her returns for 1964 and 1965, petitioner claimed deductions in the amounts of $159.60 and $336.50, respectively, for "substitute teachers for religious holidays." Petitioner claims that these amounts were paid by the Board of Education and withheld from her salary. The only evidence submitted by petitioner to substantiate her claim was a letter from the New York City Board of Education which contained a record of petitioner's absences for the years in question. The letter indicates that petitioner took four religious holidays in 1964 and two in 1965 but contains no information as to whether any amounts were withheld from petitioner's salary. Moreover, we have no way of determining whether if any amounts were, in fact, withheld for the stated purpose, they were nevertheless included in the amounts in her gross salary as reported in petitioner's W-2 Forms and included in her returns. In the absence of such proof of inclusion, petitioner is not entitled to any deduction. *239 See Palmer Hutcheson, 17 T.C. 14, 19 (1951). Petitioner was an elementary school teacher in the New York City school system. Petitioner claimed deductions of $300 for each of the years 1964 and 1965 for educational courses which she testified were required by her employer, the Board of Education of the City of New York. No written evidence was submitted in the trial or during the thirty-day period during which the record was kept open. (See footnote 4, supra). However, petitioner did attach to her brief a Bursar's Receipt from Teachers' College, Columbia University, and two transcripts in support of her claimed deductions. We 451 have decided to consider these documents as evidence. Although the evidence as to the connection between the expenditure of $170 shown thereon and petitioner's employment is not wholly satisfactory, we have concluded (and so find) that petitioner had deductible educational expenses in that amount for 1964. Petitioner also claimed deductions for professional journals, books, lectures, and supplies in the amounts of $70 and $150 for 1964 and 1965, respectively. Although no written proof was submitted, we are satisfied that some of the claimed *240 expenditures were made and find that petitioner is entitled to deduct $35 for each of the years in question for these professional expenses. Cohan v. Commissioner, supra.
Addition to Tax Finally, our examination of the entire record leads us to conclude that petitioner has failed to carry her burden of proving that no part of the underpayment for 1965 was due to negligence or intentional disregard of respondent's rules and regulations. Robert L. Bunnel, 50 T.C. 837, 843 (1968); David Courtney, 28 T.C. 658, 669-670 (1957). See section 1.6001-1(b), Income Tax Regs. Therefore, the addition to tax provided for by section 6653(a) is applicable to that year. To reflect our determinations herein and the concessions made by the parties, Decision will be entered under Rule 50. Footnotes
1. All references are to the Internal Revenu Code of 1954. ↩
2. Respondent has conceded on brief that petitioner is entitled to the deductions claimed for professional society and union dues for each of the years involved herein. Respondent has also conceded that the amount of $75 claimed as a deduction by petitioner for each of the years 1964 and 1965 for costumes, scenery, lights, records, and music for school plays is properly deductible. Petitioner has not contested respondent's determination that she received savings bank interest of $363 in 1964, which amount was not reported in her income tax return. Respondent's disallowance of claimed deductions for state and local taxes is predicated solely on the allowance of the standard deduction in lieu of itemized deductions. Respondent does not dispute the payment of the amounts claimed.↩
3. In reaching this conclusion, we have totally ignored the fact that respondent did not contest the claimed exemption for petitioner's mother for the taxable year 1964.↩
4. We note that the record in this case was kept open for thirty days after the conclusion of the trial for the purpose of permitting petitioner to submit other written evidence as to medical expenses as well as the other categories of disallowed deductions, but petitioner took advantage of this opportunity only to a limited degree with respect to payments to substitute teachers and union dues. ↩
5. Of the expenditures conceded by the respondent, it appears that only the amount of $1.89 in 1964 was for medicine and drugs.↩